[Crim. No. 2918.    Fourth Dist., Div. One.    Jan. 18, 1968]

THE PEOPLE, Plaintiff and Respondent, v. JAMES JUSTICE LEGG, JR., Defendant and Appellant.

Walker & Davis, James E. Walker, Wallace R. Davis and Richard S. Platt for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, George J. Roth, Lola M. McAlpin and Thomas Kerrigan, Deputy Attorneys General, for Plaintiff and Respondent.

WHELAN, J.—Defendant Legg (defendant) and a codefendant, Stowe, were convicted in a nonjury trial of posses-

sion of marijuana. Defendant appeals from an order granting him probation.

The sole attack on the conviction is a concentration of numerous shafts directed against the search that discovered the contraband received in evidence. We have concluded that the search and seizure were not illegal.

At about 2 o'clock in the morning of December 10, 1966, Holt, an officer of the Newport Beach police force, and a fellow officer, in a black and white police vehicle, were patrolling an area in the city where one week before there had been half a dozen thefts from and burglaries of parked automobiles, of which several had been from the trunks of such vehicles. The officers were acting under direction from their superior.

As the police drove through an intersection, Holt saw defendant standing in the roadway of 43rd Street alongside a car parked at the west curb. Forty-third Street runs in a generally north-south direction, and is intersected by Seashore Avenue, on which the police were traveling, and, one block north of Seashore, by Balboa Avenue.

The police car traversed the block enclosed by 43rd, 42nd, Seashore and Balboa, and then drove southerly on 43rd Street. Defendant was still in the roadway and was seen by Holt to look in the direction of the police car, then about 100 feet away. Defendant then started to walk northerly, on the double, jumped a fence 2½ to 3 feet high, then ran into a house at 121 43rd Street. The police car came to a halt in the street almost directly in front of the house as defendant entered it. Holt, who had already seen that the trunk of the car alongside which defendant had been standing was open about 4 inches, alighted from the police car and went to the door through which defendant had entered the house, and was shortly joined by the other officer. Holt knocked on the door; almost immediately defendant opened a window near the door and asked what was wanted. Holt answered, "Police officer. Open the door. I want to talk to you." Defendant opened the door part way and stood at the opening. Holt pushed the door further open as defendant stepped back; Holt, who was familiar with the odor of burning marijuana, immediately smelled marijuana smoke, and formed the opinion that marijuana was being smoked in the house. He then pushed the door fully open; defendant said, "I don't want you to come in here"; Holt, however, walked into the house. There, the odor of marijuana was much stronger; there seemed to be a

cloud of smoke. Defendant was told by Holt that someone had been smoking marijuana in the house and that he intended to find the source of the smoke. Holt entered a bedroom, which was defendant's, where he saw a wooden pipe that contained a residue of marijuana, and found a green glass water pipe with marijuana residue in it, and a pipe made of paper which gave off an odor of marijuana. Elsewhere in the house were a marijuana cigarette, some loose marijuana and four partially burned marijuana cigarettes. Stowe was in another room of the house.

In conversation with defendant in the house, Holt asked what defendant was doing outside; and was told that defendant had not been outside; Holt then asked who had just come into the house, and was told no one had.

Holt's original purpose in wishing to talk to defendant was to ask him what he had been doing alongside the car with the trunk lid lifted up. Holt suspected that defendant probably had stolen something from the open trunk. However, if defendant had not opened the door of the house Holt said he would not have broken through the door. He did not examine the parked car before going to the door of the house; later he examined the car and discovered that the cover of the trunk could not be closed and was held down by wire.

Both defendant and Stowe testified. Although defendant testified he had been outside, he stated he had first been outside with several girls who had visited the house, and then gone into the house and had come out again with Stowe with whom he had re-entered the house some 15 minutes before Holt knocked. Defendant testified he had seen a police car moving along 43rd Street just before entering the house the second time. Neither defendant nor Stowe controverted Holt's testimony as to what happened after Holt knocked at the door. Specifically, defendant made no claim that he felt under compulsion to open the door because of Holt's language, tone or manner; and stated no reason for having opened the door.

In the examination of Holt by defense counsel and by the court, Holt was called upon to say that by his words, "Police officer. Open the door. I want to talk to you" he had ordered defendant to open the door; earlier he had testified he requested defendant to open the door. He also testified he did not have probable cause to arrest defendant before defendant entered the house; although elsewhere he testified he did not know whether he had probable cause to arrest.

The court, after having found defendant guilty, informed counsel that the officer, before he knocked on the door, had reasonable cause to believe either that a felony had been committed or was in the process of being committed.

■ If in opening the door defendant was not acting in response to an unlawful expression of authority, the actual entry by the officer was lawful because he entered only after detecting the smell of marijuana from within. His identity and presence were already apparent to the defendant, so that the further statement by the officer was unnecessary.

Defendant claims, however, that the police had no right to tell defendant to open the door, although conceding that the officer would have been justified in detaining defendant outside for questioning, or in seeking an interview with defendant at the house, citing as authority *People* v. *Shelton,* 60 Cal.2d 740 [36 Cal.Rptr. 433, 388 P.2d 665], and *People* v. *Haven,* 59 Cal.2d 713 [31 Cal.Rptr. 47, 381 P.2d 927]. '' 'Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances.' (*People* v. *Michael,* 45 Cal.2d 751, 753 [290 P.2d 852].)'' (*People* v. *Shelton,* 60 Cal.2d 740, 746 [36 Cal.Rptr. 433, 388 P.2d 665].)

In *People* v. *Haven, supra,* 59 Cal.2d 713, the police walked into the house uninvited through a door they found ajar at a time when they did not have probable cause to make an arrest.

In *People* v. *Shelton, supra,* 60 Cal.2d 740, 747, the court stated: ''What we are concerned with is the right of all persons to be free from unreasonable invasions of the privacy of their homes. The right to seek interviews does not justify an officer's intruding himself into a home without consent, either physically (*People* v. *Haven,* 59 Cal.2d 713, 717 [31 Cal.Rptr. 47, 381 P.2d 927]) or by a view of the interior made possible only by a wrongful assertion of authority. (*People* v. *Edgar, ante,* pp. 171, 174 [32 Cal.Rptr. 41, 383 P.2d 449].) 'There are many reasons other than guilt of a felony why an occupant of an apartment may not wish himself or others present exposed to the immediate view of a stranger, even if the stranger is a police officer.' (*Tompkins* v. *Superior Court,* 59 Cal.2d 65, 68 [27 Cal.Rptr. 889, 378 P.2d 113].)''

The facts in *Shelton* were that the police went to the apartment for the express purpose of making a search for narcotics, after they had arrested the defendant at a point several miles away; when the officer said to the occupant of the apartment,

"Open the door right now," the defendant had just previously refused to cooperate with the police in telling the woman occupant that it was defendant who had knocked; the police had not gone to the apartment for the purpose of interviewing the woman, who claimed that she was nude when she opened the door; nor had they any reason to suspect her of the commission of a crime.

By contrast with those facts, Officer Holt's only purpose in telling defendant to open the door was to interview defendant, whom he had the right and duty to interview. That purpose might have been served by defendant's talking to the officer from the doorway or by his stepping outside for the interview; the officer informed defendant what his purpose was; in saying "Open the door" to a person who had apparently fled under suspicious circumstances from the police into the house the conduct of the officer was wholly reasonable, was not accompanied by any express or implied threat or a use of force; in fact the use of force by the officer was not intended; it was only by viewing the man behind the door that the officer could know if that man was the same man that had run into the house and with whom the officer wished to talk; the immediacy of the officer's knock at the door with relation to defendant's entry removes the odium of a threatened invasion of defendant's privacy.

Because the officer was justified in seeking the vis-a-vis interview with defendant, which he requested without any assertion of a right to enter, it is not necessary to discuss whether he had probable cause to make an arrest on the basis of what he had observed or suspected before he knocked at the door.

Judgment affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied February 1, 1968, and appellant's petition for a hearing by the Supreme Court was denied March 13, 1968.