[Crim. No. 3956. Fourth Dist., Div. One. June 24, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
LON ANDERSON, Defendant and Appellant.

## COUNSEL

Frederick L. Hetter for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert W. Carney, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**WHELAN, J.**—Lon M. Anderson (defendant), after a motion to suppress evidence was denied, pleaded guilty to possession of marijuana. A charge of possession of restricted dangerous drugs was dismissed. Defendant appeals from the order granting probation.

### STATEMENT OF FACTS

The only evidence in support of the motion to suppress was that contained in the transcript of the preliminary hearing.

On March 20, 1969, Ronald Wibe, a deputy sheriff working on cases involving juveniles, was in the office of James Humphrey, principal of an elementary school in the Santee area of San Diego County, for the purpose

of obtaining Humphrey's permission to interview a student concerning burglaries in the area. The conversation was interrupted by a telephone call for Humphrey from his wife, who told him their 16-year-old son, Kent, was at the apartment of defendant.

Kent had been suspended from school for truancy and had been under order from his parents to remain at home, either in the house or yard. That information was given by Humphrey to Wibe.

Kent's presence at defendant's apartment had been reported to Mrs. Humphrey by an older son.

Because Humphrey was not certain Kent would accompany him home without resistance, Humphrey asked Wibe if the latter would go with him to pick up Kent and take him home. He asked Wibe to place Kent under arrest only if that should become necessary to effect Kent's return home. Wibe agreed and the two started off in Wibe's official car for Anderson's apartment.

Wibe recognized Anderson's name when it was mentioned by Humphrey and he had reason to believe, from past information, that Anderson might be involved with narcotics. Wibe had also gained information regarding the apartment building in general, and it was suspected by the sheriff's department that narcotics were being used in the apartment complex. The attention of the department, however, had not focused on any of the individual units in the complex. No mention was made of narcotics or drugs during the time Humphrey and Wibe were together before the former entered Anderson's apartment.

There were about 30 apartments in the complex. Although Humphrey did not know which was defendant's apartment, through the window of an apartment he saw Kent seated in a chair as Humphrey and Wibe walked from the parked car about 50 feet away. Humphrey said, "There's Kent" to Wibe, who also saw the boy but would not have known him otherwise.

Humphrey saw that Kent had seen him, and that Kent stood up and moved uncertainly first in one direction and then in another, from which Humphrey formed the impression the boy intended to go out the back or the front door.

Humphrey proceeded to the front door, followed closely by Wibe, and opened the door which had been closed. There was no screen door. Humphrey entered and saw Kent standing a short distance away. Humphrey said to Kent, "You're under arrest."

Until Humphrey went in Wibe had not known what Humphrey would

do, whether he would knock and wait to be admitted or enter without knocking.

After the door had been opened by Humphrey, Wibe, at the doorway, intended to follow Humphrey in, to assist him if necessary, or, if necessary, to prevent violence on either side. However, as soon as Humphrey opened the door Wibe became immediately conscious of a strong smell of marijuana, with the smell of which he was familiar. Humphrey also on opening the door was conscious of a strong odor that he did not identify.

Wibe then entered, noticing the presence of two other persons as he did so. He went to where Humphrey and Kent were standing; after he saw nothing was going to happen between them he noted the positions of defendant seated on a couch and of Bruce Hostetler seated in a chair.

Wibe found the smell of marijuana even heavier after he entered. He glanced around the front room and saw on a couch Zig-Zag cigarette papers and a plastic bag with particles of green matter in it which he thought was marijuana.

Wibe placed all three persons under arrest for possession of marijuana and went to a telephone to call the sheriff's office for assistance. While he was doing that Humphrey observed Hostetler stoop over from the chair in which he was sitting and place something under an ashtray that was on the floor in front of him. After Wibe had finished telephoning, Humphrey told him of that. Wibe saw in the ashtray several roaches, or stubs, and a partially-smoked marijuana cigarette rolled in a paper match clip.

A search of the apartment discovered other marijuana and dangerous restricted drugs in various locations.[1]

Debris containing marijuana was found in defendant's pocket.

## CONTENTIONS ON APPEAL

■ Defendant contends the arrest and search were unlawful in that neither Wibe nor Humphrey knocked and announced his presence before entering the apartment, as required by Penal Code, section 844, which provides "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have

---

[1]Though the issue is not raised by the parties, we note the nonapplicability of *Chimel* v. *California*, 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. *People* v. *Edwards,* 71 Cal.2d 1096, 1107-1108 [80 Cal.Rptr. 633, 458 P.2d 713], held the rule of *Chimel* does not apply to searches conducted prior to the date of the *Chimel* decision (June 23, 1969). The search in the present case was conducted on March 20, 1969.

reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

Section 844 could not have given Humphrey any right to enter even if he had done the mechanical acts called for by the section, since if he intended to make an arrest it was not for a felony.

Understandable as his action might be, Humphrey, in entering, apparently violated section 602.5, Penal Code.

If the unauthorized entry by Humphrey was an act for which Wibe had any responsibility, his subsequent actions would have been tainted by that irregularity. The trial court held Wibe had no such responsibility.

*Stapleton* v. *Superior Court,* 70 Cal.2d 97 [73 Cal.Rptr. 575, 447 P.2d 967], dealing as it does with a situation in which the search of a car by a layman "was clearly part of a joint operation by police and the credit card agents aimed at arresting petitioner and obtaining evidence against him," is not controlling in the present case. Here the reason for going to defendant's mother's apartment was neither to arrest defendant nor to obtain evidence against him, and had nothing to do with defendant personally.

Whether the visit to the apartment was initiated by Wibe, whether Humphrey acted as Wibe's agent or under instructions from him in opening the door, whether Wibe had said or done anything reasonably calculated to cause Humphrey to open the door without permission, are all questions of fact that were resolved by the trial court on the basis of the evidence in the record. That evidence is sufficient to support the trial court's findings.

It is possible that Humphrey acted with more boldness than he would have had he not known Wibe was behind him. If so, that would not outweigh as a matter of law the affirmative evidence that Humphrey was acting on his own.

We have assumed that Humphrey was not on such terms with the Anderson family that he could enter without knocking and without specific permission. We do not assume and the trial court did not infer that Wibe had a right to prevent or control Humphrey's action in entering without knocking. (See *People* v. *Coleman,* 263 Cal.App.2d 697, 703-704 [69 Cal.Rptr. 910].)

Wibe, however, might properly have taken Kent into custody under the provisions of section 625, Welfare and Institutions Code, the relevant part of which reads: "A peace officer may, without a warrant, take into temporary custody a minor: "(a) Who is under the age of 18 years when such officer has reasonable cause for believing that such minor is a person described in Sections 600, 601, or 602 . . ."

The questions are whether Wibe entered for the purpose of making such arrest, or for another lawful purpose, and in either event whether his personal noncompliance with section 844, Penal Code, is excused under the circumstances.

We conclude he did not enter with the fixed intention of arresting Kent under section 625, Welfare and Institutions Code; that in relation to Kent's flouting of parental authority, Wibe's only purpose was to be available should a need arise.

The heavy odor of marijuana that became apparent as soon as Wibe came to the open doorway afforded probable cause to believe the crime of possession of marijuana was being committed within the reach of Wibe's senses.

In that situation, if Wibe was lawfully in the position from which he smelled the marijuana and had not been a party to the opening of the door which released the odor of marijuana, there existed probable cause to arrest the possessors if they were present. (*People* v. *Bock Leung Chew,* 142 Cal.App.2d 400 [298 P.2d 118]; *People* v. *Gann,* 267 Cal.App.2d 811, 812-813 [73 Cal.Rptr. 502]; *People* v. *Legg,* 258 Cal.App.2d 52 [65 Cal.Rptr. 541].)

However, neither probable cause to believe a felony was being committed, nor probable cause to arrest, alone or in combination, justifies a failure to observe the requirements of Penal Code, section 844.

The police might quote Gelett Burgess:

> "The Door is Open; I Must Say,
> "I Rather Fancy it That Way!"

but the open-door policy is not a substitute for the requirements of section 844. (*People* v. *Bradley,* 1 Cal.3d 80 [81 Cal.Rptr. 457, 460 P.2d 129].) It has been held that even in the fullness of daylight the police may not enter an open door to make an arrest without compliance with section 844 unless circumstances exist to excuse such failure. (*People* v. *Arias,* 6 Cal.App.3d 87 [85 Cal.Rptr. 479]; *People* v. *Norton,* 5 Cal.App.3d 955 [86 Cal.Rptr. 40]; *People* v. *Beamon,* 268 Cal.App.2d 61 [73 Cal.Rptr. 604]; cf. *People* v. *Roberts,* 47 Cal.2d 374 [303 P.2d 721].)

Among the circumstances bearing upon the question are the knowledge of the persons within that police are present outside, that they seek to enter, that they intend to do so, and of their purpose in being there. The discovery by the officer that a crime is being committed beyond the open door, within the purview of his senses and unrelated to the purpose for which he was at the door, is another such circumstance.

If circumstances existed that would have permitted Wibe to enter without complying with section 844 in order to take Kent into custody under section 625, Welfare and Institutions Code, they existed to permit such entry for the additional purpose of making an arrest for possession of marijuana.

The trial judge may have inferred that Kent had informed his companions of the approach of his father and the deputy sheriff and that he had been seen, that all three realized the purpose of the visit, and that the entry of Humphrey indicated to them the probability the officer also would enter.

Humphrey's uninvited entry was the thing that might have precipitated the undesirable consequences in the way of violent reaction, the avoidance of which is one of the purposes of section 844.

Wibe's subsequent entry should be viewed in light of that fact and of those inferences.

Neither *People* v. *Gastelo,* 67 Cal.2d 586 [63 Cal.Rptr. 10, 432 P.2d 706], *People* v. *Rosales,* 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489], *Greven* v. *Superior Court,* 71 Cal.2d 287 [78 Cal.Rptr. 504, 455 P.2d 432], nor *People* v. *Bradley, supra,* 1 Cal.3d 80, compel the conclusion that compliance with the provisions of section 844 by Wibe was not excused by the circumstances related.

The order granting probation is affirmed. The appeals from denials of motions to suppress evidence and to set aside the information are dismissed as nonappealable.

Brown (Gerald), P. J., and Ault, J., concurred.