[Crim. No. 3850. Fourth Dist., Div. Two. July 8, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD EARL RICE, Defendant and Appellant.

COUNSEL

George H. Chula for Defendant and Appellant.

Thomas C. Lynch, Attorney General, W. E. James, Assistant Attorney General, and Mark Leicester, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**GARDNER, P. J.**—Prosecution for violation of section 11530.5, Health and Safety Code. Judgment of conviction of violation of section 11530, Health and Safety Code, affirmed.

Appellant was charged with possession of marijuana for purposes of sale (Health & Saf. Code, § 11530.5). After a trial by jury he was found guilty of possession of marijuana (Health & Saf. Code, § 11530, a lesser and necessarily included offense). He appeals from the judgment of conviction.

Another individual, Mark Stanton, was to be tried as a codefendant with appellant, however, a motion to suppress certain contraband was granted as to Stanton and the charges against him were dismissed on motion of the district attorney.

On January 11, 1968, Sergeant Green of the Palm Springs Police Department was informed by the Los Angeles Police Department that an arrest warrant had been issued for the appellant for possession of marijuana for the purposes of sale. It was stipulated at trial that no such warrant had, in fact, been issued. Nevertheless based upon the belief there was such a warrant, Sergeant Green, accompanied by Officer Collurafici, went to an address in Palm Springs to effect an arrest on what he believed to be an outstanding warrant.

The officers had information which led them to believe that appellant was involved in the use of narcotics and was so involved with other persons. They felt that there was a strong possibility that there were others at the residence and in case there was a "dope party" in progress, they wanted to be sure they had adequate manpower to handle it. To determine how many people were there, Collurafici proceeded to the rear of the house while Green remained at the front door. While proceeding to the rear of the house, Collurafici looked into an open window into the living room. He observed no one in the room but did detect an odor of burning marijuana emanating from the room. He then returned to the front of the house and told Sergeant Green that he had smelled the odor of marijuana coming from the house.

Sergeant Green knocked on the door and appellant opened the door. Green identified himself as a police officer and said that he wanted to talk to the appellant. Appellant said, "We can talk here." Sergeant Green asked his name and appellant said, "Eddie Rice." Sergeant Green advised him that he was wanted by the Los Angeles Police Department and that he was under arrest for "marijuana for sale."

At the same time the officers noticed the strong odor of burning marijuana coming from the inside of the residence. They flashed a light into appellant's eyes and noted that the pupils remained dilated. Sergeant Green qualified as an expert and gave his opinion that the appellant was apparently under the influence of a narcotic at that moment.

Both officers then entered the house and commenced to search. Sergeant Green conducted a search of the bedrooms, discovered certain contraband and arrested Mr. Stanton who was in the bedroom. In the meantime, Officer Collurafici remained in the living room, on the arm of a couch noticed a shoe box and upon looking into it, he saw a substance which he recognized as marijuana. The box contained several pieces of hashish, some marijuana, a pipe, and marijuana cigarette butts.

The appellant was informed of his constitutional rights on two occasions. The first time immediately after his arrest, and, again, upon the discovery of the box of contraband. The advice given by Sergeant Green was, "He was advised that he was under arrest. He was also advised that he was entitled to an attorney; that if he could not afford an attorney, one would be provided for him free of charge. He was advised that he did not have to make any statement of any kind. He was advised that anything he would say could and would be used against him at a later date in a court of law." Upon inquiry by Sergeant Green, the appellant stated that he understood the advisement given. Thereupon Officer Collurafici picked up a piece of hashish from the shoe box and asked the appellant, "What is this?" The officer testified, over objection, that the appellant replied, "Hashish."

The appellant testified that he had been invited to stay in this house; that he had arrived the previous evening; that after hiking and swimming, he went out to have dinner and when he returned from dinner, Mr. and Mrs. Stanton were in the living room; that he conversed with them briefly and then retired; that later in the evening he was awakened by a loud knocking noise at the front door; when no one else answered, he went to the front door, opened it and was confronted by the officers, one of whom was shining a flashlight in his eyes. He was asked his name, to which he replied—"Eddie Rice." The officers said they wanted to talk to him and he stated, "We can talk here." At this point, the officers forced the door open and one of them escorted him into the living room. The other officer then came into the room with the Stantons. An officer removed a substance of some kind from the purse of Mrs. Stanton and asked appellant if he knew what it was and he replied, "Hashish." The appellant stated that the officers told him that Mrs. Stanton and her child would be placed in jail if he did not cooperate.

He denied knowledge of any contraband in the house or that he had

smoked any marijuana that evening, that the only odor he was aware of was that of burning incense.

Appellant contends:

## I.

That the Arrest and Search of Appellant Were Unlawful Because They Were the Result of the Exploitation of an Illegal Arrest of Other Persons.

Prior to trial appellant made a motion to suppress all evidence seized incident to his arrest. At that hearing, it was stipulated that the court could consider the evidence taken at the preliminary hearing,[1] and that taken at a prior motion to suppress before another judge. In addition, the trial court heard the testimony of two witnesses for the defense.

Appellant contends that information leading to his arrest was obtained through an unlawful arrest of Greg Stephan, that as a result of the illegality of the arrest of Stephan, the police obtained certain information from a Miss Mardesich who was with Mr. Stephan; that this information led to his arrest; that this information was tainted by the illegal arrest, and, therefore, rendered unlawful his eventual arrest and the ensuing search. (*Wong Sun* v. *United States,* 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407].)

There are two answers to this contention: (1) there is no evidence in this record that the location of the appellant was obtained from Miss Mardesich, and (2) any information obtained from her was not obtained by reason of any arrest, lawful or otherwise, of Mr. Stephan but rather by reason of the lawful taking into custody of Miss Mardesich.

The record shows that a "hippie type truck" being driven by Mr. Stephan at 10:30 to 11 p.m. in Palm Springs was stopped by a Palm Springs police officer for speeding and for not having a light over the rear license plate. Mr. Stephan had identification; his male, adult companion, Mr. Mardesich, did not. At the time of the stop, the police noticed an open container of beer in the vehicle—for which the driver was cited—and saw in the rear of the vehicle two girls, 16 and 17 years of age, lying on a mattress partially covered by a blanket. Upon inquiry, the girls said they were from Long Beach, that they were in Palm Springs for the weekend, that

---

[1]The parties did not include the transcript of the preliminary hearing in the transcript on appeal. Nevertheless in order that we may know what information the trial court had before it in making its ruling, we have augmented the record on our own motion, and the record now contains a transcript of the preliminary examination.

they were staying with the two male adults, one of whom was said to be a brother of one of the girls, and that they had their parents' permission so to do. They had no identification. The police suspected that the girls were runaways, took the girls into custody to the Palm Springs police station. There, they called the girls' parents and upon determining that the girls had parental consent, released them. At the same time, Mr. Stephan and Mr. Mardesich were arrested and taken to the police department. It was during this period of the detention of the girls and the arrest of the male adults that the police ascertained the address at which the appellant was eventually arrested. The girls gave that address as the address at which *they* were staying. There is nothing in the record to show that the police asked them if they knew the appellant would be there. Thus, there is no evidence that the officers ascertained the whereabouts of the appellant either from the girls or from the two male adults who had been arrested.

As indicated, the driver of the car, Mr. Stephan, and Mr. Mardesich were arrested by the Palm Springs police officer. They were arrested for contributing to the delinquency of a minor and for burglary. It is these arrests which appellant attacks. However, whatever the reason for these arrests, it is not necessary to determine their validity for the purpose of making a ruling on this issue.

The police had a lawful right to stop the vehicle for a traffic violation. Thereafter, they saw enough to reasonably justify the exercise of their authority under Welfare and Institutions Code, section 625, subdivision (a), and to take the minor girls into temporary custody. That section provides that a peace officer may, without a warrant, take into temporary custody a minor who is under the age of 18 years when such officer has reasonable cause for believing that said minor is a person described in section 601 of the Welfare and Institutions Code. ▮ Runaways clearly come within section 601, Welfare and Institutions Code.

Courts do not exist in a vacuum. We are aware that runaway girls currently present a serious social problem plaguing both parents and law enforcement officials. Under the facts outlined above, the officers had reasonable cause to believe that the girls were runaways and to take the girls into custody. They did so in good faith and promptly released them upon ascertaining that they had parental consent to be where they were. (One might question the exercise of parental judgment in giving consent in view of the facts of this case but that is not a matter before us.) Therefore, whether the arrest of Mr. Stephan and Mr. Mardesich was lawful is immaterial. The police could have taken the girls into custody without arresting either of them. Furthermore, there was no connection between their arrest and any information obtained as to appellant's residence as to create a *Wong Sun* problem.

## II.

THAT THE SEARCH OF THE APPELLANT WAS UNLAWFUL BECAUSE IT WAS INCIDENT TO AN ARREST BASED ON A NON-EXISTENT WARRANT, THUS, THE EVIDENCE SEIZED WAS CONSTITUTIONALLY INADMISSIBLE.

The district attorney stipulated and the court ruled that an arrest is invalid when made pursuant to a good faith belief that a warrant had been issued, when, in fact, no such warrant existed. The case was tried on the theory that there was independent probable cause for the arrest regardless of the lack of a valid warrant.

 The rule is that even though an arrest has been made on a constitutionally invalid warrant, the arrest and incident search may nevertheless be justified if the arrest is not based exclusively upon the warrant but if other facts were present at the time of the arrest which furnished probable cause to arrest without a warrant. (*People* v. *Chimel,* 68 Cal.2d 436, 440-441 [67 Cal.Rptr. 421, 439 P.2d 333], overruled on other grounds in *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]; *People* v. *Donovan,* 272 Cal.App.2d 413, 419 [77 Cal.Rptr. 285]; see also *People* v. *Sanford,* 265 Cal.App.2d 960, 966 [71 Cal.Rptr. 790].)[2]

---

[2]In *People* v. *Thompson,* 6 Cal.App.3d 945 [86 Cal.Rptr. 327], it was determined that an arrest warrant was constitutionally invalid. A federal narcotics agent and a deputy sheriff went to the home of the individual named in the arrest warrant. The officers knocked on the door and were told to enter by the defendant. The defendant was then informed that he was under arrest pursuant to the warrant. After gaining entrance and placing the defendant under arrest, one of the officers noticed an alligator clip (commonly used for holding short marijuana cigarettes) and some marijuana seeds. These items were located on a table which was five to six feet inside the residence. The officers then conducted a search of the entire premises and discovered additional contraband.

The court, after a finding the warrant was invalid, held that the entrance into the residence was illegal because it was based on the invalid warrant. Applying the doctrine of *Wong Sun* v. *United States,* 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407], the court went on to find that the illegal entrance tainted the evidence seized. The court reasoned that ". . . the entry was illegal, [the officer's] subsequent observations of the marijuana seeds and the 'alligator clip' did not justify the warrantless search, because he was not in a position or place where he was legally entitled to be at the time he first made his observation of them." (*People* v. *Thompson, supra,* 6 Cal.App.3d at p. 951.)

The present case is distinguishable from *Thompson* primarily because in this case there was no entrance into the premises prior to the officers observing the physical characteristics of the appellant and detecting the odor of burning marijuana. The officers made these observations while standing at the front door after it had been opened by the appellant. They had a right to be in the place where the observations were made because they were acting in good faith reliance that a warrant was outstanding. Had the officers entered the house without first making such observations but only for the purpose of effecting an arrest pursuant to the warrant, perhaps then it could be said that they were not legally in a place to make observations of any contraband within the house.

In the present case the appellant had ample notice at the time of trial that the prosecution did not rely entirely on the belief in the existence of a warrant to justify the arrest of the appellant. (See *People v. Chimel, supra,* p. 441; see also *People v. Hamilton,* 71 Cal.2d 176, 178 [77 Cal.Rptr. 785, 454 P.2d 681].) The parties stipulated that there was not an arrest or search warrant in existence at the time of the arrest. The court at that point indicated that even a good faith belief by the officers in the existence of a warrant would not validate the arrest. In response, the district attorney agreed with the proposition of the court. During the course of the trial the prosecutor repeated several times that the People did not seek to justify the arrest upon the officers' belief in a warrant but that the officers had probable cause to arrest after observing the appellant's appearance and smelling burning marijuana.[3]

Thus, the question presented is whether probable cause to arrest existed in the present case.

The officers who effected the arrest both testified that when a light was directed into the eyes of the appellant when he answered the door his eyes failed to dilate in a normal manner indicating the possible recent use of a narcotic. The smell of burning marijuana permeated the entire house. It has been held repeatedly that such observations made by police officers with training and experience in the field of narcotic detection establishes probable cause to arrest an individual for being under the influence of marijuana in violation of section 11721 of the Health and Safety Code. (*People v. Beal,* 268 Cal.App.2d 481, 484 [73 Cal.Rptr. 787]; *People v. Valdez,* 260 Cal. App.2d 895, 899-900 [67 Cal.Rptr. 583]; *People v. Legg,* 258 Cal.App.2d 52, 55 [65 Cal.Rptr. 541].)

It is unnecessary to consider whether the search in the present case was in violation of *Chimel v. California, supra,* 395 U.S. 752, since the search was conducted prior to the decision in that case. (*People v. Edwards,* 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713].)

---

[3]However, the officers' belief in the existence of a warrant, while not sufficient in itself to justify the arrest, is of some significance. The fact that the officer had received information from an official source concerning an alleged warrant indicates that the officers' act of going to the residence was reasonable and not merely the result of some unfounded hunch of the officers that criminal activity might be underway there. A totally different situation would be present if the officers were not acting in response to a communication from another police department but were instead indiscriminately knocking on all doors in the neighborhood until they chanced upon someone engaged in criminal activity.

## III.

### That the Arrest and Search of Appellant Were Unlawful Because They Were the Result of an Unreasonable Search by a Police Officer Trespassing on Private Property.

Appellant contends that his arrest and subsequent search were unlawful because they were based on the detection of an odor of burning marijuana by Officer Collurafici while he was committing a trespass in the rear yard of the residence in which appellant was staying.

Appellant attempts to support his contention by relying on the case of *People* v. *Edwards, supra,* 71 Cal.2d 1096. In that case the court concluded that a search of a trash can located immediately adjacent to the rear door of the defendant's house constituted an unlawful search and the contraband thus found was constitutionally inadmissible. The court noted that it was necessary for the officers to trespass on the property of the defendant in order to conduct a search of the trash can. However, the basis of the court's conclusion that this was an unreasonable search is not that the search was conducted during a trepass but that the articles placed in the trash can were not considered abandoned by the defendant and he had a reasonable expectation of privacy which could not be invaded without probable cause to arrest or pursuant to a warrant.

The conclusion that *Edwards* was not intended to establish the proposition that observations made during a technical trespass invariably are the products of an unreasonable search is indicated by the citing with approval its previous decision in *People* v. *Terry,* 70 Cal.2d 410 [77 Cal.Rptr. 460, 454 P.2d 36]. In that case, the court held that a peaceful entrance on private property by police officers without a warrant or permission of the owner, "Even if such an entry constitutes a trespass, a simple trespass without more does not invalidate a subsequent search and seizure." (*People* v. *Terry, supra,* p. 427.)

In the present case, the officers went to the residence because of information received through official channels; Officer Collurafici did not testify as to how he got into the backyard other than to say, "I went to the rear yard area of the residence." However, absent evidence to the contrary, it may be reasonably assumed that he simply used a route normally used for access to that area. The significant observation made by the officer was a detection of the smell of burning marijuana. ■ The act of smoking marijuana in a room with an open window is not an act done by a person exhibiting a reasonable expectation of privacy. (*People* v. *Edwards, supra,*

71 Cal.2d 1096, p. 1100.) The smell of the marijuana would not be limited to the room or even the immediate yard of the house but could conceivably drift to adjoining premises.

## IV.

### THAT THE SEARCH OF THE PREMISIES COULD NOT BE JUSTIFIED ON THE BASIS OF THE DETECTION OF THE SMELL OF BURNING MARIJUANA.

Appellant erroneously relies on the case of *People* v. *Marshall,* 69 Cal.2d 51 [69 Cal.Rptr. 585, 442 P.2d 665], to support his contention on this issue. *Marshall* held that although officers may seize items which are in "plain sight" even though they are not searching incident to a lawful arrest, "plain smell" is not equated to "plain sight" for such purposes. However, *Marshall* did not hold that officers could not use their sense of smell for the purposes of determining whether the crimes of possession or use of marijuana are being committed in their presence as to provide grounds for arrest. Smell is a factor in determining the reasonableness of an arrest and incidental search. (*People* v. *Craycraft,* 1 Cal.App.3d 947, 950-951 [82 Cal.Rptr. 154]; *People* v. *Temple,* 276 Cal.App.2d 402, 410, fn. 10 [80 Cal.Rptr. 885].)

## V.

### THAT THE EVIDENCE WHICH WAS SUPPRESSED AS TO THE CO-DEFENDANT SHOULD HAVE ALSO BEEN SUPPRESSED AS TO THE APPELLANT.

Prior to trial both defendants, Rice and Stanton, made a motion to suppress evidence seized at the time of their arrest. The court granted the motion as to Stanton but denied it as to the appellant. At the commencement of the trial, the charges against Stanton were dismissed pursuant to a motion by the People. The appellant requested the court to issue its findings concerning the extent of the suppression of evidence. The court stated that such findings would be filed at a later time. It does not appear from the record that the court ever filed its findings as it indicated.

Appellant, following the court's statement that findings would be forthcoming, raised an objection to the introduction of any evidence of contraband or the mention of contraband by the prosecutor in his opening statement. The basis of the defense's objection was the suppression of evidence as to the codefendant. The court sustained the objection, ". . . insofar as the evidence found in the bedroom with Stanton, and I take it to be a motion to direct the District Attorney to make no reference to that in his open-

ing statement. The motion as to the other evidence, and the motion in connection therewith, is denied as to the balance."

Appellant's argument may be interpreted as having two distinct bases: first, the evidence found in the Stantons' bedroom which was suppressed as to Stanton should have also been suppressed as to the appellant; second, as a result of suppression of evidence as to Stanton *all* evidence should also be suppressed as to the appellant.

Appellant is correct in the first instance. ■ Evidence which is seized in violation of the constitutional rights of one defendant should be suppressed as to codefendant if such evidence will be prejudicial to the co-defendant. (See *Rosecrans* v. *United States,* 334 F.2d 738; *Jones* v. *United States,* 362 U.S. 257 [4 L.Ed.2d 697, 80 S.Ct. 725, 78 A.L.R.2d 233].) The trial court in the present case was mindful of this rule and prior to presentation of evidence instructed the prosecutor to refrain from making any comment concerning the contraband seized in Stanton's bedroom. The only reference made to this contraband was made by the defense during its opening argument. When asked by the court why reference was being made to evidence which had been suppressed, and after the prosecution had been instructed to make no references to it, the defense replied that it had changed its theory. Presumably, the defense intended to establish that all contraband in the house was under the dominion and control of Stanton. Appellant cannot now assert error in the introduction of suppressed evidence which was by his own actions.

The second point raised by appellant, that *all* evidence seized in the house should be suppressed, is without merit.

■ The court was correct in its ruling restricting its order of suppression to the contraband seized in the bedroom while allowing the introduction of the contraband found in the living room. The court in suppressing the evidence as to Stanton apparently was of the opinion that the search conducted by the officers of the bedroom was beyond the reasonable scope of a search incident to the arrest of the appellant in the living room. The fact that the bedroom was found to be outside the scope of a permissible search does not taint the contraband seized in the living room. The officers did not discover the contraband in the living room as the result of exploitation of an illegal search of the bedroom. Under the then existing law, the contraband seized in the living room was within the scope of a search incident to a lawful arrest of the appellant while he was in the living room area and the court properly held that this evidence was admissible.

## VI.

### That the Admission of Appellant's Statement at the Time of His Arrest Was Prejudicial Error.

At the time of the arrest of the appellant, he was shown a bag of substance which was stipulated to be hashish. In response to the officer's question, "What is this?" the appellant stated, "Hashish." At trial the appellant's statement was introduced over the objection of counsel.

Appellant now contends that the statement was constitutionally inadmissible on two separate grounds. First, he asserts that the statement was elicited only after an illegal arrest and search. In view of the previous discussion of these points, this contention is without merit.

The second objection raised to the admission of the statement is that it was made after an improper constitutional warning. (*Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].) Appellant concedes that he was informed of his right to be represented by counsel but that he was not specifically offered the immediate services of counsel prior to any interrogation. A recent California Supreme Court decision cited with approval several appellate court decisions which found, ". . . a waiver where the evidence shows that the police have stated the four-pronged *Miranda* warning without offering to immediately secure counsel, that they asked the defendant if he understands those rights, that the defendant has responded affirmatively, and that the defendant without expressly stating that he has waived counsel proceeds to make damaging statements. [Citations.]" (*People* v. *Johnson,* 70 Cal.2d 541, 556 [75 Cal.Rptr. 401, 450 P.2d 865]; see also *People* v. *Jarvis,* 276 Cal.2d 446, 456 [80 Cal.Rptr. 832].)

In the present case the appellant was advised of his *Miranda* rights as set out in the statement of facts above. When asked if he understood his rights, he replied, "Yes, I do." In light of *Johnson,* appellant was given a proper advisement and his affirmative answer that he understood the advisement was sufficient to constitute a waiver.

## VII.

### That Appellant Was Denied a Fair Trial Because of the Prosecutor's Expression of His Personal Opinion of the Defendant's Guilt During Argument to the Jury.

Prejudicial misconduct occurs when a prosecutor expresses his personal belief in the guilt of the defendant before a jury. (*People* v. *Alverson,* 60 Cal.2d 803 [36 Cal.Rptr. 479, 388 P.2d 711].) However, the two state-

ments of the prosecutor referred to by the appellant are not expressions of a belief in guilt as found in *Alverson*.

In the first statement cited by the appellant, the prosecutor stated, "I consider very significant, ladies and gentlemen, in the last year since the 11th of January, if this stuff wasn't Mr. Rice's like we say it is, that the three unidentified heretofore unseen friends of his would have been discovered and if it was theirs they'd 'fess-up." This was not a statement of personal belief in the guilt of appellant but was comment upon appellant's failure to produce a material witness at trial. Such comment is permissible. (*People v. Conover,* 243 Cal.App.2d 38, 49 [52 Cal.Rptr. 172].) Nevertheless, the trial court apparently was of the opinion that such comment was unfair and sustained defense counsel's objection to it and admonished the jury to disregard the comment. An admonishment to disregard error committed by the prosecutor in his closing argument is sufficient to cure the error. (*People v. Wilson,* 256 Cal.App.2d 411, 421-422 [64 Cal.Rptr. 172].)

The second statement of the prosecutor alleged as improper by appellant was as follows: "We have two pipes. I agree with the status of the evidence that it is uncertain as to whether the pipes were warm or not. Certainly they were not burning, there is testimony to that effect. But the significance of that, . . . , that the narcotics were being used and the defendant now has told us he didn't smell anything unusual when he woke up. But he did remember, if you recall the facts, that there was incense burning in the house the day before at that time, but he didn't detect anything unusual at the time he was arrested.

"It doesn't add up, ladies and gentlemen. It doesn't add up in my mind." It appears from this statement of the prosecutor that he was merely commenting on the evidence as he saw it. California courts have distinguished comments on the evidence from comments on belief in the guilt of the defendant. The prosecution may discuss the evidence presented and give his view to the jury as to the proper deductions and inferences that the evidence warrants. (*People v. Miller,* 71 Cal.2d 459, 482 [78 Cal.Rptr. 449, 455 P.2d 377]; *People v. Burwell,* 44 Cal.2d 16 [279 P.2d 744].)

## VIII.

THAT THE COURT'S REJECTION OF CERTAIN JURY INSTRUCTIONS REQUESTED BY THE APPELLANT WAS PREJUDICIAL ERROR.

Appellant offered two non-CALJIC instructions which the trial court refused to read to the jury. One instruction, based on the case of *People v. Green,* 152 Cal.App.2d 886 [313 P.2d 955], stated, in essence, that merely

being in the company of a person believed to have committed a felony is not sufficient to sustain a guilty verdict. The other instruction was derived from *People* v. *Redrick,* 55 Cal.2d 282 [10 Cal.Rptr. 823, 359 P.2d 255], and pointed out the necessity of showing that the defendant in a narcotics possession case exercised dominion and control over the narcotic with knowledge of its narcotic character.

It is not error for a trial court to reject instructions requested when the substance of the instruction is covered by those instructions given. (See *People* v. *Arguello,* 61 Cal.2d 210 [37 Cal.Rptr. 601, 390 P.2d 377]; *People* v. *Galvan,* 208 Cal.App.2d 443 [25 Cal.Rptr. 128].)

In the present case the court read to the jury two instructions requested by the appellant which informed them that the presence of one in a place where narcotics were seized is not sufficient to justify a guilty verdict and the presence of one in a place where marijuana has recently been smoked is not sufficient to sustain a guilty verdict. These two instructions specifically cover the subject matter of appellant's theory of a defense, while the instruction, requested and refused, that presence where a felony has been committed is not sufficient for a guilty verdict, is merely a general statement of the same points raised by the given instructions.

The court also gave CALJIC 701 as requested by the prosecution. That instruction clearly sets out the requisite elements of possession of narcotics, i.e., accused must exercise dominion and control over the narcotic with knowledge of its presence and its character. To give the instruction requested by appellant concerning dominion and control would have been simply repetitious.

### IX.

Appellant contends that if each issue raised above is resolved in his favor, there would be no admissible evidence upon which to convict. In view of the previous discussion of those issues, appellant's contention of insufficient evidence to support the verdict is without merit.

Judgment affirmed.

Kerrigan, J., and Tamura, J., concurred.