Filed 4/2/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re R.T., a Person Coming Under the Juvenile Court Law. | B256411 |
| | (Los Angeles County Super. Ct. No. DK03719) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. LISA E., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Marguerite D. Downing, Judge.  Affirmed.

Nancy Rabin Brucker, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

\* \* \* \* \* \*

A "rebellious" and "incorrigible" teen repeatedly runs away from home, placing herself and her infant daughter at "substantial risk [of] . . . serious physical harm." (Welf. & Inst. Code, § 300, subd. (b)(1).)[1] Can the juvenile court assert dependency jurisdiction over the teen on the ground that her mother, who tried everything she could, was still unable "to adequately supervise or protect" the teen? (*Ibid.*) *In re Precious D.* (2010) 189 Cal.App.4th 1251 (*Precious D.*) said "no," reasoning that the first clause of section 300, subdivision (b)(1), requires proof of parental culpability. We respectfully disagree, and hold that the language, structure, and purpose of the dependency statutes counsel against *Precious D'*s conclusion that this provision turns on a finding of parental blameworthiness. When a child thereby faces a substantial risk of serious physical harm, a parent's inability to supervise or protect a child is enough by itself to invoke the juvenile court's dependency jurisdiction.

## FACTS AND PROCEDURAL HISTORY

Lisa E. (mother) gave birth to R.T. in 1996. When R.T. was 14, she began running away from home for days at a time, not attending school, falsely reporting that her mother abused her, and at least on one occasion throwing furniture. At least one of her absences necessitated a visit to the hospital. R.T. also began having children—one when she was 15 (who became a dependent of the court) and another a few years later. Mother made efforts to supervise and safeguard R.T.: She went looking for R.T. whenever she left home; she arranged for R.T. to live with mother's parents because R.T.'s grandfather used to work with troubled juveniles and because R.T.'s false reports were made when R.T. and mother were alone; she called the police for help; and she asked the Los Angeles County Department of Children and Family Services (Department) for assistance, although she declined to voluntarily submit R.T. to the Department's jurisdiction. Notwithstanding these efforts, R.T. remained "rebellious," "incorrigible," and "out of control."

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

The Department filed a petition to declare then-17-year-old R.T. a dependent of the juvenile court on the ground that she faced "a substantial risk [of] . . . serious physical harm or illness, as a result of the failure or inability of [mother] to adequately supervise or protect" her. (§ 300, subd. (b)(1).) The juvenile court asserted jurisdiction over R.T., denying mother's motion to dismiss the petition. The court reasoned that "the mother can't control [R.T.], so she has given her off to grandparents and they can't control her either." The court then issued a dispositional order authorizing the Department to place R.T. elsewhere while reunification services were provided, and the Department placed her back with her grandparents.

Mother timely appeals.[2]

## DISCUSSION

Mother argues that the juvenile court erred in asserting dependency jurisdiction over R.T. (and, by extension, erred in making its dispositional order premised on that jurisdiction) because (1) the first clause of section 300, subdivision (b)(1), as interpreted in *Precious D.*, *supra*, 189 Cal.App.4th 1251, requires proof that the parent's inability to supervise or protect her child stems from being "unfit or neglectful" (*id.* at p. 1254; see also *In re James R.* (2009) 176 Cal.App.4th 129, 135, quoting *In re Rocco M.* (1991) 1 Cal.App.4th 814, 820), and (2) there was insufficient evidence that she was unfit or neglectful because she did her best to control R.T.

It is critical to clarify what *Precious D.* meant by "unfit or neglectful."[3] *Precious D.* involved facts strikingly similar to this case—namely, an incorrigible teen

---

[2]    While this appeal has been pending, R.T. turned 18. We grant mother's request to judicially notice the court documents so indicating. R.T.'s majority does not moot this appeal because the juvenile court's assertion of jurisdiction over R.T. may reflect adversely on mother's suitability to act as a caregiver to R.T.'s two children in any future dependency proceedings involving those children (for whom mother has cared in the past). (Accord, *In re Daisy H.* (2011) 192 Cal.App.4th 713, 716.)

[3]    *In re James R.* and *In re Rocco M.* add nothing to the analysis because they refer to "neglectful conduct by the parent *in one of the specified forms*" and thus do no more

3

who repeatedly endangered herself by running away from home, and a mother who "tried everything" to no avail. (*Precious D.*, *supra*, 189 Cal.App.4th at p. 1257.) Thus, the mother in *Precious D.* was in no way neglectful, but was "unfit" insofar as she was unable to supervise or protect her daughter. Thus, by "unfit," the *Precious D.* court was looking not only to the *reason* for the parent's unfitness, but also for some proof that the parent be blameworthy or otherwise at fault. (*Id.* at p. 1259 [concluding there was no basis to be "critical of Mother's parenting skills or conduct"].)

Like the mother in *Precious D.*, mother in this case was neither neglectful nor blameworthy in being unable to supervise or protect her daughter. The Department argues that mother "abdicated" her parental role by placing R.T. with her grandparents and by declining the Department's invitation to voluntarily consent to jurisdiction. But mother's decision to put R.T. with her more experienced grandparents—the very same placement the Department later made—was not neglectful or blameworthy. Her decision not to voluntarily accede to jurisdiction was also not evidence of neglect or culpability.

Because there was no neglect or blameworthy conduct, and because it is undisputed that R.T's behavior placed her at substantial risk of serious physical harm or illness, the propriety of the juvenile court's assertion of dependency jurisdiction turns on a single question: Must a parent be somehow to blame for her "failure or inability" to adequately supervise or protect her child, when that inability creates a substantial risk of serious physical harm or illness, before a juvenile court may assert dependency jurisdiction pursuant to the first clause of section 300, subdivision (b)(1)?

This is a question of statutory interpretation we review de novo. (*Nguyen v. Western Digital Corp.* (2014) 229 Cal.App.4th 1522, 1543.) Our review is informed, but not controlled, by the decision of our sister Court of Appeal on this question. (*The MEGA Life & Health Ins. Co. v. Superior Court* (2009) 172 Cal.App.4th 1522, 1529.)

---

than recharacterize the statutory grounds as "neglect." (*In re James R.*, *supra*, 176 Cal.App.4th at p. 135; *In re Rocco M.*, *supra*, 1 Cal.App.4th at p. 820.)

## I.     Statutory construction

In answering the question presented by this case, we start with the statutory language.  (*Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 630 (*Stiglitz*).)  The first clause of section 300, subdivision (b)(1), confers dependency jurisdiction over a child who "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child."  (§ 300, subd. (b)(1).)  The text itself does not speak to whether the parent must also be to blame for this "failure or inability."[4]

We must interpret this silence in the manner most consonant with the legislative intent behind this provision.  (*Stiglitz*, *supra*, 60 Cal.4th at p. 630.)  Two indicia—one implicit and one explicit—point to the conclusion that this clause of section 300, subdivision (b)(1) has no culpability requirement.

The language we are interpreting is just one of many provisions setting forth various grounds for dependency jurisdiction.  Some of these provisions require a showing that the parent acted intentionally.  (See § 300, subds. (a) [parent's "nonaccidental" "inflict[ion]" of physical harm on child], (c) [child suffered, or is at substantial risk of suffering, serious emotional damage "as a result of" the parent's conduct], (d) [parent's sexual abuse of child], (e) [parent's infliction of severe physical abuse on a child under five years old], (g) [parent incarcerated or voluntarily surrendered child at safe surrender site], (i) [parent subjected child to acts of cruelty].)  Under other provisions, negligent conduct by the parent will suffice.  (See § 300, subd. (b)(1) [second clause; parent's "willful or negligent failure" to supervise or protect child when leaving child with another person]; *ibid.* [third clause; parent's "willful or negligent failure" to provide "adequate food, clothing, shelter, or medical treatment"]; *id.*, subd. (d) [parent did not protect child from sexual abuse, when parent knew or should have known of risk]; *id.*,

---

**4**     For clarity's sake, we will refer to "parents," but our discussion applies equally to "guardians."

subd. (e) [same, as to severe physical abuse of child under five years old]; *id*., (i) [same, as to acts of cruelty]; *id*., (j) [parent's "abuse or neglect" caused death of another child]; *id*., (g) [parent's whereabouts are unknown].)  And for still others, dependency jurisdiction is appropriate when the parent is not to blame.  (See § 300, subd. (c) [child is suffering, or at substantial risk of suffering, serious emotional damage, and "has no parent or guardian capable of providing appropriate care"]; *In re Alexander K.* (1993) 14 Cal.App.4th 549, 557 [this clause of section 300, subdivision (c), requires "no parental fault or neglect"]; *In re Roxanne B.* (2015) 234 Cal.App.4th 916, 921 [same]; § 300, subd. (g) [when child "has been left without any provision for support"]; *D.M. v. Superior Court* (2009) 173 Cal.App.4th 1117, 1128-1129 (*D.M.*) [this clause of section 300, subdivision (g), need not be willful]; § 300, subd. (b)(1) [fourth clause; parent's "inability . . . to provide regular care for the child" due to parent's "mental illness" or "developmental disability"].)

Where, as here, the Legislature has expressly made parental culpability an element of some grounds for dependency jurisdiction but not an element of others, we generally infer that the omission of a culpability requirement from a particular ground was intentional.  (*In re Ethan C.* (2012) 54 Cal.4th 610, 638 ["When language is included in one portion of a statute, its omission from a different portion addressing a similar subject suggests that the omission was purposeful."] (*Ethan C*.).)  This inference is even stronger when the differential treatment appears in the same section and, indeed, the very same subdivision—subdivision (b)(1)—we are interpreting.

This inference becomes compelling when read in conjunction with the Legislature's explicit declaration that dependency jurisdiction is to be read broadly: "[T]he purpose of the provisions of this chapter relating to dependent children is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm."  (§ 300.2.)

Construing the first clause of section 300, subdivision (b)(1) to require a showing of parental fault, as mother urges, not only ignores these indicia of legislative intent, but also tasks the judiciary with drawing lines better drawn by the Legislature. Mother argues that her inability to supervise or protect R.T. is not blameworthy, but that a parent's inability to supervise or protect a younger child might be. "At some point," mother reasons, "the order of human growth and development" shifts the blame from parent to child. If we were to recognize a culpability element, we would have to fix that point. But where would we place it, and what criteria would we use in doing so? This blameworthiness line, if it is to be drawn at all, is a policy decision within the special competence of the legislative branch, not the judicial branch.

When read in light of these considerations, the text and purpose of the first clause of section 300, subdivision (b)(1) point to the conclusion that a showing of parental blame is not required.[5]

## II. Countervailing arguments

Mother offers two arguments that, in her view, compel us to reject the statutory analysis set forth above.

### A. *Constitutional avoidance*

Mother asserts that the interpretation of the first clause of section 300, subdivision (b)(1) is governed by a different and weightier canon of statutory construction—namely, the "cardinal" rule that a statute should, where possible, be construed in a manner that avoids doubts about its constitutionality. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1373.) This canon was the basis for *Precious D.*'s ruling. (*Precious D.*, *supra*, 189 Cal.App.4th at pp. 1260-1261.)

Natural parents have a "fundamental liberty interest . . . in the care, custody, and management of their child[ren]." (*Santosky v. Kramer* (1982) 455 U.S. 745, 753 (*Santosky*).) Consequently, due process guarantees that the state may not terminate a

---

[5] Of course, the assertion of jurisdiction on this basis is specific to R.T., and is not a global finding that mother is unfit as to other children. (*In re Cody W.* (1994) 31 Cal.App.4th 221, 225-226 (*Cody W.*).)

parent's rights with respect to her child without first making (1) a showing of parental unfitness, (2) by clear and convincing evidence. (*Id.* at pp. 747-748, 758, 760, fn. 10; *Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1130 (*Ann S.*); *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 254 (*Cynthia D.*).) *Precious D.* reasoned that the assertion of dependency jurisdiction based on parent's blameless inability to control her daughter made it possible for that parent's right over that child to be terminated without any finding of parental unfitness. (*Precious D.*, *supra*, 189 Cal.App.4th at pp. 1260-1261.) We are unpersuaded by this argument for two reasons.

First, this argument conflates parental "unfitness" with parental culpability. But they are not the same. "Unfitness" is concerned *whether* a parent is able to protect the welfare of her child; culpability is concerned with *why*. As noted above, unfitness can stem from a parent's willful acts, her negligence, or acts entirely beyond her control and for which she is not culpable (such as suffering from a developmental disability). The decisions governing the constitutional constraints on the termination of parental rights define "unfitness" with reference to the child's welfare, not the culpability of the child's parents. (See *Santosky*, *supra*, 455 U.S. at p. 766 [noting "state's *parens patriae* interest in preserving and promoting the welfare of the child"]; accord, *In re Vonda M.* (1987) 190 Cal.App.3d 753, 757 ["the imposition of juvenile dependency jurisdiction must depend upon the welfare of the child, not the fault of or lack of fault of the parents"].) Indeed, if unfitness were synonymous with fault, all of the grounds for dependency jurisdiction having no element of parental blame would be constitutionally suspect. (See § 300, subds. (b)(1) [fourth clause], (c), (g).)

Second, when "unfitness" is properly defined, there is no danger that allowing a juvenile court to assert jurisdiction over a child based on the parent's "failure or inability . . . to adequately supervise or protect the child" from a substantial risk of physical harm or illness will result in the termination of parental rights without a finding, by clear and convincing evidence, of parental unfitness. *Precious D.* correctly noted that a court's assertion of dependency jurisdiction over a child is made only by a preponderance of the evidence. (§§ 300, 355.) But the assertion of jurisdiction is

8

"merely a first step" (*Ethan C.*, *supra*, 54 Cal.4th at p. 617) in a multi-step process that may or may not lead to the termination of parental rights (*Cynthia D.*, *supra*, 5 Cal.4th at pp. 247-250 [detailing steps]), and due process requires only that a finding of parental unfitness be made "'at some point in the proceedings . . . before parental rights are terminated'" (*Ann S.*, *supra*, 45 Cal.4th at p. 1134, italics omitted; *In re Z.K.* (2011) 201 Cal.App.4th 51, 66). Under California law, there is no danger that dependency proceedings will reach the stage where parental rights are terminated without a finding of parental unfitness.

The parental rights of mothers and "presumed" fathers not having custody of their children may be terminated only upon a finding, by clear and convincing evidence, of their unfitness made at the permanency planning hearing conducted pursuant to section 366.26. (*In re T.G.* (2013) 215 Cal.App.4th 1, 20 ["[A] court may not terminate a nonoffending, noncustodial mother's or presumed father's parental rights without finding, by clear and convincing evidence, that awarding custody to the parent would be detrimental."]; *Cody W.*, *supra*, 31 Cal.App.4th at p. 225 [finding of "detriment" is "'equivalent [to] a finding of unfitness'"], citing *In re Jasmon O.* (1994) 8 Cal. 4th 398, 423; *In re G.P.* (2014) 227 Cal.App.4th 1180, 1193 [same].)

The parental rights of parents having custody of their children, like mother in this case, may also only be terminated at a permanency planning hearing. (§ 366.26, subd. (c).) Although no finding of unfitness need be made at that hearing for custodial parents (*In re Amanda D.* (1997) 55 Cal.App.4th 813, 819; *In re Jason J.* (2009) 175 Cal.App.4th 922, 931, fn. 3), there are only four procedural paths to that hearing for custodial parents and each them of requires a finding, by clear and convincing evidence, of parental unfitness. A section 366.26 hearing may be convened (1) after a child (a) is removed from her parent upon a finding, by clear and convincing evidence, on one of six grounds of unfitness (§ 361, subds. (c)) and (b) is not returned to her parent's custody for at least 12 months (§§ 366.26, subd. (c)(1), 366.21, subd. (g), 366.22, subd. (a), 366.25, subd. (a)(3)), (2) after a child is removed due to the parent's incarceration or abandonment without support and upon a finding, by clear and convincing evidence, that

9

(a) the parent's whereabouts are unknown and (b) the parent has not contacted or visited the child for at least six months (§§ 366.26, subd. (c)(1), 366.21(e)), (3) after a finding, by clear and convincing evidence, that services to reunify the parent and child are unwarranted for one of 16 different reasons all involving parental unfitness (§ 361.5, subd. (b)) or that reunification services with an incarcerated or institutionalized parent would be detrimental to the child (§ 361.5, subd. (e)(1); see generally §§ 366.26, subd. (c)(1), 361.5, subd. (f)), or (4) after finding that the parent has been convicted (beyond a reasonable doubt) of a felony indicating parental unfitness (§ 366.26, subd. (c)(1)). More than twenty years ago, our Supreme Court observed that "[b]y the time dependency proceedings have reached the stage of a section 366.26 hearing, there have been multiple specific findings of parental unfitness." (*Cynthia D.*, *supra*, 5 Cal.4th at p. 253.) As outlined above, today there will still be at least one such finding of parental unfitness. This satisfies due process.

We accordingly conclude there is no constitutional imperative for engrafting a blameworthiness element to the first clause of section 300, subdivision (b)(1).

### B.    *Blurring of delinquency and dependency jurisdiction*

Mother next argues that her daughter's intransigence is better viewed as an issue of truancy under section 601 that falls under the juvenile court's delinquency jurisdiction, rather than an issue of dependency. (See § 601, subd. (a) [delinquency jurisdiction may be asserted over minor "who persistently or habitually refuses to obey the reasonable and proper orders of his or her parents . . . or who is beyond the control of [his or her parents]"]; *People v. Rice* (1970) 10 Cal.App.3d 730, 736 [runaways qualify under section 601].) To construe section 300 to apply in this situation, mother fears, will empower the Department to choose which jurisdiction—dependency or delinquency—to invoke, and will thereby empower the Department to nullify section 601 through disuse.

However, the power to decide which jurisdictional basis to invoke has long resided with the executive branch. To be sure, the courts have a say in choosing which jurisdictional basis—dependency or delinquency—to exert once the executive branch has invoked both. (§ 241.1; *D.M.*, *supra*, 173 Cal.App.4th at p. 1127.) But the courts have

10

no say in which jurisdiction the executive chooses to invoke in the first place.  To the contrary, "it rests in the discretion of the executive branch employees—social workers, probation officers, and the district attorney—whether to file such petitions, not the juvenile court." (*D.M.*, at p. 1127; §§ 290.1 [invocation of dependency jurisdiction entrusted to probation officers and social workers], 650 [invocation of delinquency jurisdiction entrusted to probation officers or district attorneys].)

What our interpretation of the first clause of section 300, subdivision (b)(1) does is recognize a bigger galaxy of cases in which the executive will get to decide between invoking truancy and delinquency jurisdiction (under sections 601 and 602, respectively) on the one hand, and dependency jurisdiction on the other.  But this larger galaxy is entirely consistent with the Legislature's expressed intent that dependency jurisdiction be broadly construed (§ 300.2), and in no way nullifies section 601.

For these reasons, we respectfully disagree with the decision in *Precious D.*, and hold instead that no showing of parental blame is required before a juvenile court may assert dependency jurisdiction over a child at substantial risk of physical harm or illness due to her parent's "failure or inability . . . to adequately supervise or protect" her. (§ 300, subd. (b)(1).)

## DISPOSITION

The jurisdictional and dispositional orders of the juvenile court are affirmed.

**<u>CERTIFIED FOR PUBLICATION</u>.**


_____, J.
                                                    HOFFSTADT

We concur:

_____, Acting P. J.
          ASHMANN-GERST


_____, J.
          CHAVEZ

11