[Crim. No. 18741. Second Dist., Div. Four. Feb. 18, 1971.]

THE PEOPLE, Plaintiff and Appellant, v.
NORMA MAE LEIGHTER et al., Defendants and Respondents.

## COUNSEL

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Daniel L. Lieberman, Deputy District Attorneys, for Plaintiff and Appellant.

Harvey A. Schneider and William J. Bjornsen, under appointments by the Court of Appeal, for Defendants and Respondents.

## OPINION

**DUNN, J.**—Two separate cases are involved in this appeal: People v. Norma Mae Leighter (Los Angeles Superior Court No. A545569) and People v. George Millard Korte (Los Angeles Superior Court No.

A545570). Separate informations were filed charging each defendant, in counts I and II, with possession on March 11, 1970, of seconal and of benzedrine, felonies committed in violation of Health and Safety Code, sections 11910 and 11911. As to Korte, a third count charged him with possession of marijuana on that same date, a felony in violation of Health and Safety Code, section 11530.

Each defendant made a motion to suppress evidence under Penal Code, section 1538.5 and, by stipulation, these motions were heard together. On April 23, 1970 they were denied. On April 24th the court set aside its order so that it could hear further argument and on this reconsideration, granted the motions. Thereafter, the court dismissed each case in the interests of justice under Penal Code, section 1385.

This is an appeal by the People under Penal Code, section 1238, subdivision (7), from the orders of dismissal.[1]

Los Angeles Deputy Sheriff Joseph D. Barrett was the sole witness testifying at the special hearing, conducted pursuant to Penal Code, section 1538.5, subdivision (i). He testified that, on March 11, 1970, he received information from Mr. Reck who owned a residence at 2512 Strathmore in the Rosemead area. Reck lived in a house located at the rear. He reported that he looked through a window as he passed the front house and observed an unknown man give another unknown male an injection. Reck returned later and saw the same man counting white tablets.

Barrett, another deputy and Reck went to the house and Reck knocked on the door, which was opened by respondent Leighter. As the door opened, Barrett "observed the strong odor of what appeared to be burning marijuana emitting from the interior of the location." Barrett had considerable experience with such odor. He immediately entered the house intending to arrest the occupants for violation of Health and Safety Code, section 11556.[2]

As he entered, Barrett saw an unconscious female "lying flat on her back

---

[1] The notices of appeal were filed before November 23, 1970, on which date an amendment adding subdivision (c) to Penal Code, section 1238 became effective. This amendment specifically permits appellate review of an order suppressing evidence, made after a special hearing, and followed by a dismissal made pursuant to Penal Code, section 1385. Even before such amendment, however, similar authority on review was held to exist. (*People* v. *Perillo* (1969) 275 Cal.App.2d 778, 780 [80 Cal.Rptr. 160]; *People* v. *Evans* (1969) 275 Cal.App.2d 78, 80 [79 Cal.Rptr. 714]; *People* v. *Foster* (1969) 274 Cal.App.2d 778, 781-783 [79 Cal.Rptr. 397]; *People* v. *Superior Court* (1969) 271 Cal.App.2d 338, 344-348 [76 Cal.Rptr. 712].)

[2] Health and Safety Code, section 11556: "It is unlawful to visit or to be in any room or place where any narcotics are being unlawfully smoked or used with knowledge that such activity is occurring."

in the doorway between the living room and kitchen." He went over to her, concluded that she needed medical care and directed another deputy to call an ambulance.

While standing in the living room, he saw a water pipe used for smoking marijuana or hashish resting on a TV set. The pipe emitted a strong odor of burning marijuana. He felt the pipe's bowl and noted it was warm to the touch. It contained some burned matter and some unburned substance resembling marijuana.

There were four persons in the house. These were respondents George Korte and Norma Leighter, Jerry Stephens and the unconscious young woman, later identified as Diane Leighter. Korte was lying on a couch in the living room and appeared to be intoxicated. All were placed under arrest for violating Health and Safety Code, section 11530, possession of marijuana. (The reporter's transcript states the section as 11550, an obvious inadvertence since there is no such section number.)

After the ambulance removed Diane, and while the others were being handcuffed, Barrett observed a paper sack lying on a shelf. Protruding from it was a large plastic bag containing numerous red capsules resembling seconal. He went over to the sack and, on opening it further, found there were many small plastic bags inside, each containing red capsules, together with a bag of what apparently was marijuana. Also on the shelf was a half-open leather pouch. Protruding through the opening he saw a clear plastic vial holding many double-scored white tablets resembling benzedrine. He opened the pouch and inside were 400 tablets contained in three vials, together with 20 additional red capsules.

It was stipulated that respondent Leighter, after her arrest, was searched by a female deputy sheriff at the station house and was found to possess 173 white double-scored tablets and nine red capsules. It was also stipulated the charges against her were based exclusively upon her possession of this contraband.

It was further stipulated the officers had no arrest or search warrant. The record does not disclose if any of the deputies were in uniform.

■ Appellant first contends the trial court was without jurisdiction to reconsider respondents' motions to suppress, for which reason the orders suppressing the evidence are invalid. We disagree.

Appellant relies upon *People* v. *Superior Court* (1970) 10 Cal.App.3d 477 [89 Cal.Rptr. 223]. In that case, defendants moved to suppress evidence. The motion was heard October 8, 1969, by Judge Schmidt. Six witnesses testified and the motion was then argued and denied. Defendants' petition to the Court of Appeal for a writ of prohibition was denied

without opinion. Defendants thereafter moved to renew their motion and Judge Ettinger granted them a hearing which took place April 6, 1970. Substantially the same evidence was presented and this time the motion was granted. The prosecution then petitioned for and obtained a writ of mandamus annulling the trial court's order. Resting its opinion upon language in Penal Code, section 1538.5, the First Division of our district concluded that a defendant is entitled to only one pretrial motion to suppress evidence in the superior court, and the trial court had no basis for granting a review, by way of rehearing.

There are many factors distinguishing that case from our own. Some are: (1) there, the hearings took place months apart; (2) the second was a completely new hearing, but one at which identical evidence was offered and received; (3) the first order denying the motion to suppress was not set aside; rather, the second judge in essence reviewed it and overruled it by making a contrary order based upon the same evidence.

In our case, no new "hearing" was conducted at which evidence, either identical or different, was presented. The trial judge seemingly decided only that he might have been hasty and perhaps mistaken in denying the motion and, on his own initiative, set his order aside so that he might hear further argument. As an *in limine* order relating only to the admissibility of evidence it had no finality, unless so provided by statute. The People voiced no objection to rearguing the matter, whereas in *People* v. *Superior Court, supra,* the prosecution strenuously objected.

Penal Code, section 1538.5, subdivision (i) provides that after a special hearing in the superior court "any review thereafter desired by the defendant prior to trial shall be by means of an extraordinary writ of mandate. . . ." In our case no "review" took place. (See, *e.g.: In re Shattuck* (1929) 208 Cal. 6, 8-9 [279 P. 998]; *Ray* v. *Parker* (1940) 15 Cal.2d 275, 290 [101 P.2d 665].) No judge reviewed the action of the first judge to determine if he acted properly and within his authority. Instead, the first judge, on his own motion, reopened the proceedings before him in order that he could give it further thought. *People* v. *O'Brien* (1969) 71 Cal.2d 394, 402-403 [78 Cal.Rptr. 202, 79 Cal.Rptr. 313, 456 P.2d 969] (2d motion made at trial) is clearly distinguishable. In *People* v. *Krivda* * (Cal.App.) 91 Cal.Rptr. 219, cited by appellant in oral argument, the facts not only are distinguishable but our Supreme Court has granted a hearing.

It is true there should be some finality to orders made on pretrial motions, and that a renewal of the same motion may be so burdensome and

---

*A hearing was granted by the Supreme Court on January 14, 1971. The final opinion of that court is reported in 5 Cal.3d 357 [96 Cal.Rptr. 62, 486 P.2d 1262].

provoking that a court may refuse to consider it. (Witkin, Cal. Criminal Procedure (1963) p. 25, § 22; 2 Witkin, Cal. Procedure (1954) Proceedings Without Trial, p. 1649, § 12; Witkin, Cal. Procedure (1967 Supp.) Proceedings Without Trial, pp. 589-590, § 12.) However, a court does have jurisdiction to reconsider an *in limine* motion, absent some statutory prohibition. Here, defendants did not seek a "review"; Penal Code, section 1538.5, thus was not violated and the trial judge acted within his authority in entertaining further argument. It should be emphasized that, in reaching this conclusion, we do not approach the situation presented in *People* v. *Superior Court, supra,* which is quite distinguishable, as herein indicated. There a second judge, acting in a pretrial hearing upon identical evidence, disagreed with a first judge's conclusions and attempted to overrule him. No such "review" occurred here and we are not faced with that problem.

### *The People's Appeal vs. Leighter*

■ The parties' argument on this appeal revolves around the validity of Leighter's arrest. They concern themselves with the applicability of Penal Code, section 844.[3] In so doing, they overlook one factor, namely, it was respondent Leighter who opened the door. When she did, and the officer smelled marijuana, he then had reasonable cause to arrest her. (*Mann* v. *Superior Court* (1970) 3 Cal.3d 1, 7 [88 Cal.Rptr. 380, 472 P.2d 468]; *People* v. *Peterson* (1970) 9 Cal.App.3d 627, 633 [88 Cal. Rptr. 597]; *People* v. *Nichols* (1969) 1 Cal.App.3d 173 [81 Cal.Rptr. 481].) None of the contraband found in the house was charged against Leighter, but only the evidence found at the jailhouse search, following her arrest.

The fact the officer made no arrest until he stepped inside is of small consequence. No entry for the purpose of arresting Leighter was necessary. She was at the doorway and available to arrest then and there. (*People* v. *Hagen* (1970) 6 Cal.App.3d 35, 43 [85 Cal.Rptr. 556].) Entry was required only to arrest the others inside, beyond the doorway.

The fact Officer Barrett did not immediately arrest Leighter for violation of section 11556, and a few moments later announced her arrest for possession of marijuana under Health and Safety Code, section 11530, is of no consequence. (*People* v. *Bevins* (1970) 6 Cal.App.3d 421, 426-427 [85 Cal.Rptr. 876].) ■ When, standing in the doorway, he detected the

---

[3]This section reads in part: "To make an arrest . . . in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is . . . after having demanded admittance and explained the purpose for which admittance is desired."

odor of burning marijuana the crime described by section 11556 was then being committed. Penal Code, section 841, requires that a person arrested be told the cause of the arrest "except when . . . the person to be arrested is actually engaged in the commission of . . . an offense. . . ." It was thus immaterial whether Barrett did or did not tell her the cause for her arrest.

The evidence did not disclose how long respondent Leighter had been on the premises and if she was there during the time marijuana actually was being smoked by someone. Such factors, however, would relate to her guilt or innocence of the crime defined in section 11556. Probable cause for arrest would not hinge upon such factors, bearing in mind the court's concern only with a motion to suppress evidence and not with a finding of guilt or innocence.

It is true that, on a motion to suppress, a trial court must decide if the People have produced sufficient evidence to establish that a seizure made without warrant was reasonable, *i.e.:* was with probable cause, and "The credibility of the witnesses, the weight of the evidence, and the resolution of conflicts are matters exclusively within the province of the trial court." *Martinez* v. *Superior Court* (1970) 7 Cal.App.3d 569, 576 [87 Cal.Rptr. 6]. (And see: *People* v. *West* (1970) 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409]; *People* v. *Thornton* (1970) 8 Cal.App.3d 741, 745 [87 Cal.Rptr. 535]; *People* v. *Perales* (1970) 4 Cal.App.3d 773, 780 [84 Cal.Rptr. 604].) Where, as here, however, the trial court makes no express findings and the record of the section 1538.5 proceeding "affirmatively indicates that the trial court did not pass upon a factual issue, a finding thereon may not be implied." *People* v. *Superior Court* (1970) 9 Cal.App.3d 203, 211 [88 Cal.Rptr. 21].

A review of the record in the case indicates without question that the trial court did not pass upon any factual issue and believed Penal Code, section 844, was applicable as a matter of law in the action against Leighter. In so concluding, it resolved no conflicts in the evidence, since there were none, nor was it required to draw any inferences. Its determination was made strictly as a matter of law, and not of fact or of mixed law and fact. We disagree with its legal conclusion, as we may (cf: *People* v. *Boone* (1969) 2 Cal.App.3d 66 [82 Cal.Rptr. 398]). Leighter's arrest was entirely lawful as was the subsequent search of her person at the jailhouse. (*People* v. *Mercurio* (1970) 10 Cal.App.3d 426, 430 [88 Cal.Rptr. 750]; *People* v. *Rogers* (1966) 241 Cal.App.2d 384, 389 [50 Cal.Rptr. 559].)

We find that the court's orders, suppressing the evidence against respondent Leighter and dismissing the case against her, were erroneous.

### *The People's Appeal vs. Korte*

█ Officer Barrett was unaware of Korte's participation in any crime, or of his presence, until he entered the house and saw him for the first time. Barrett reasonably may have suspected other persons were in the house behind respondent Leighter, and also reasonably have had grounds to arrest such persons. These factors, however, did not alone excuse his failure to comply with Penal Code, section 844, in that: he did not state why he wished to enter or did he demand admittance. He was not in uniform, so far as the record shows, nor did he state he was a peace officer, thus making his appearance at the doorway of uncertain significance. He merely walked in without invitation when the door was opened. Such uninvited entry is a "breaking." (*People* v. *Bradley* (1969) 1 Cal.3d 80, 86-88 [81 Cal.Rptr. 457, 460 P.2d 129].)

█ A distinction is made between having probable cause to arrest and entering a house to make that arrest. As to the latter, there must be substantial compliance with section 844, or a legally recognized excuse for noncompliance must be shown. █ As stated in *People* v. *De Santiago* (1969) 71 Cal.2d 18, 29-30 [76 Cal.Rptr. 809, 453 P.2d 353]: ". . . it is clear that his [an officer's] knowledge or belief that a felony is being committed relates to probable cause for arrest—*not* to the imminence of disposal of evidence. . . . 'Just as the police must have sufficiently particular reason to enter at all, so must they have some particular reason to enter in the manner chosen.' . . . The reason for entry without announcement must be additional to the basic reason for entry." And, as stated in *People* v. *Anderson* (1970) 9 Cal.App.3d 80, 85 [88 Cal.Rptr. 4]: "However, neither probable cause to believe a felony was being committed, nor probable cause to arrest, alone or in combination, justifies a failure to observe the requirements of Penal Code, section 844."

█ While the arrest of respondent Leighter was lawful, the arrest of respondent Korte was not, having been accomplished only by unlawful entry into the residence. Thus, "Since the entry was unlawful, it vitiated the lawfulness of the arrest and subsequent search and required exclusion of the evidence obtained in that search." *People* v. *Bradley, supra,* 1 Cal.3d at p. 89. (And see: *People* v. *Hayko* (1970) 7 Cal.App.3d 604, 608 [86 Cal.Rptr. 726].) Inasmuch as the charges against Korte were based upon contraband found inside the house after the officers' illegal entry, the trial court properly suppressed the use of that evidence against Korte.

The orders suppressing evidence and dismissing the action against Korte

are affirmed. The orders suppressing evidence and dismissing the action against Leighter are reversed.

Kingsley, Acting P. J., and Irwin, J.,\* concurred.

Petitions for a rehearing were denied March 1 and March 8, 1971, and the petitions of the appellant and of respondent Leighter for a hearing by the Supreme Court were denied April 29, 1971. Peters, J., was of the opinion that the petition of respondent Leighter should be granted. Burke, J., was of the opinion that the petition of the appellant should be granted.

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.