*Supp. 769
 
 HAINES, P. J.
 

 Plaintiffs and respondents Webster M. Roberts and Luella Roberts have been at all of the times here involved the owners of the premises situate within the city of San Diego known as the Riviera Apartment Hotel. The trial court, upon sufficient evidence, found that they “had possession, control and supervision of the same, and of all rooms, suites and apartments therein”, also that they “offered for rent and rented rooms and apartments by the day, week or month, or from month to month; that said building consisted of a large number of rooms and apartments or suites of rooms, including apartment number 311 and apartment number 217, all of which were completely furnished ; that said plaintiffs retained keys to all of said rooms, suites and apartments and had access to all of them at all times for the purpose of cleaning and keeping them in order; that they furnished, laundered and changed the necessary linen, kept the carpets and windows in all said rooms] suites and apartments clean, swept the hallways, removed the garbage, and furnished all said rooms, suites and apartments with all necessary light, heat, water and telephone service”.
 

 The record shows that from October 5, 1937, to June 30, 1938, the defendants and appellants occupied the apartment numbered 311 at the agreed price of $40 per month, and beginning with July 1, 1938, until they were ousted, as hereinafter stated, occupied the apartment number 217 at the agreed price of $45 per month. There were in the building 74 distinct apartments. There were no common toilets, bathrooms, kitchens or dining rooms. The said apartment 217 consisted of kitchen, living room, dining room, bath and hall and had no connection with any other apartment, its sole exit being into a hallway which led to the street entrance. ,
 

 Defendants came to be seriously in arrears in their payments for the accommodations furnished them, as well as for deliveries of newspapers and of other incidentals made to them but paid for by respondents. The aggregate so owed is found by the court to have been $399.14, which the record appears to show to be the correct amount after allowing credit for some $24 worth of clerical work performed by Mr. Casey for respondents. At the beginning of the year 1939, or just prior thereto defendant and appellant, Walter Casey, executed to respondents a note for the amount then due. It bore date January 1, 1939, and was payable by its
 
 *Supp. 770
 
 terms on January 1, 1940. It bore no interest. Respondent Webster M. Roberts testified that he did not accept the note as a payment but merely as an acknowledgment of what was owed. Respondents had by the early part of January, 1939, become dissatisfied with appellants’ failure to keep up their payments and respondent Webster M. Roberts had insisted that something be done about it. Though, in the absence of usage or contract, the rule is otherwise (Civ. Code, sec. 1947), there seems in the instant case to be no dispute that the arrangement between these parties contemplated that defendants’ payments should be made in advance. However, after the note referred to evidencing indebtedness for the period preceding January 1, 1939, had been given, the defendants again got into arrears for their January payment, on account of which, however, Mr. Casey testified that on January 18th he tendered $25 to respondents’ bookkeeper, which sum, being substantially less than was payable for that month alone, was refused. This is denied by the bookkeeper. Respondents had made up their minds that punctual payments could not be obtained from appellants and, on January 17th, Mr. Roberts had verbally told Mr. Casey that unless he made a payment by 6 o’clock that evening his apartment would be locked. This not having been done respondents that night caused the door to the apartment to be removed from the hinges and removed from the apartment all movable furniture and bedding. This, as we saw, was the day preceding the alleged tender of the $25. Notwithstanding the removal of the door and furniture, however, appellants did not vacate the property. Their son visited them there from time to time and when they had occasion to be away themselves they hired a special police officer to remain in the apartment and “not to let anyone come in and take any of our goods from this apartment”. This instruction, as witness Walter Casey testified, applied to the landlord as well as to anyone else.
 

 This being the situation, respondents, without serving any notice in advance, commenced this action in forcible detainer to regain possession of the property, as well as for the sums owed them on account of its occupancy, and were given possession under mesne process on January 23, 1939. Upon trial of the ease they obtained judgment both for the possession
 
 *Supp. 771
 
 of the premises and also for the money owed them, including the amount represented by the note.
 

 (1) The distinction between the position of a hotel keeper or lodging house keeper with relation to his guest or lodger on the one hand and that of a landlord with relation to his tenant on the other, is fully recognized by the authorities. A mere guest or lodger is no tenant.
 
 (McDowell
 
 v.
 
 Hyman,
 
 117 Cal. 67, 71 [48 Pac. 984];
 
 Stone
 
 v.
 
 City of Los Angeles,
 
 114 Cal. App. 192, 199 [299 Pac. 838];
 
 Mathews
 
 v.
 
 Livingston,
 
 86 Conn. 263 [85 Atl. 529, Ann. Cas. 1914A, 195];
 
 Coggins
 
 v.
 
 Gregorio,
 
 97 Fed. (2d) 948;
 
 Marden
 
 v.
 
 Radford,
 
 229 Mo. App. 789 [84 S. W. (2d) 947, 955];
 
 White
 
 v.
 
 Maynard,
 
 111 Mass. 250, 253-255 [15 Am. Rep. 28] ;
 
 Green
 
 v.
 
 T. A. Shoemaker & Co.,
 
 111 Md. 69 [73 Atl. 688, 690, 23 L. R. A. (N. S.) 667] ;
 
 Linwood Park Co.
 
 v.
 
 Van Dusen,
 
 63 Ohio St. 183, 200 [58 N. E. 576, 581];
 
 Wilson
 
 v.
 
 Martin,
 
 1 Denio, 602.)
 

 In
 
 Mathews
 
 v.
 
 Livingston, supra,
 
 the court,
 
 inter alia,
 
 said:
 

 “The distinction in law between a tenant and a lodger is a substantial one. The tenant may maintain ejectment
 
 guare clausum fregit
 
 and trespass. The lodger may not.
 

 “Upon the goods of a lodger his landlord has a lien for unpaid rent. Upon those of his tenant he has no lien.
 

 “The relation established by the hiring of rooms in the home of another depends upon the contract of hiring, gathered from its terms and interpreted in the light of the surrounding circumstances, having in end the finding of the intention of the parties to the contract.
 

 “Ordinarily the landlord furnishes the lodger with a furnished room or rooms, whose care the landlord has, and whose habitation and enjoyment he has given to the lodger, while he himself retains the occupation. The tenant has the exclusive possession of his rooms while the lodger has merely the use without the actual or exclusive possession which remain in the lessor. It is a mixed question of law and fact. ’ ’
 

 Some of the decisions, indeed, deprecate the use of the term landlord at all when the other party to the arrangement is a mere guest or lodger rather than a tenant, preferring the term proprietor or other expression of like import.
 

 (2) While in their broad lines the distinctions between tenants on the one hand and mere guests or lodgers on the other are entirely clear, yet in some classes of establishments
 
 *Supp. 772
 
 their tendency is to shade into each other, and, therefore, attention has to be given to the detailed
 
 criteria
 
 that must be relied on to decide into which class given individuals fall.
 

 In the instant case the circumstances already alluded to, that the plaintiffs at all times retained keys to all of the apartments and had regular access to them for caretaking purposes, furnished the linen and caused it to be laundered, furnished regular maid service and caused the beds to be changed and in some of the apartments, though perhaps not in those of appellants, to be made every day as well, kept not only the hallways but also the carpets and windows in the apartments themselves clean, and attended to the removal of garbage, as well as furnishing light, water, heat and telephone service are matters tending as far as they go to show the relation of the parties to have been that of proprietors and lodgers rather than landlords and tenants.
 
 (Fox
 
 v.
 
 Windemere Hotel Apt. Co.,
 
 30 Cal. App. 162, 164, 165 [157 Pac. 820].)
 

 On the other hand, it is true, as we also saw that there were, on the premises, no common kitchens, dining rooms, toilets or bathrooms; that the suites had severally these various facilities; that each suite was, in some sort, a distinct unit, and that the rent for a suite was the same without regard to the number of occupants. These circumstances tended, so far as they went, to characterize the relations between respondents and appellants as those of landlords and tenants.
 
 (Fox
 
 v.
 
 Windemere Hotel Apt. Co., supra.)
 

 In determining, then, what was, in legal contemplation, the status of the parties in their relations with each other, it is manifest that the result cannot be said to depend on any one factor, as being decisive. It is rather a question of which direction the general effect of the various tests that have been applied, after weighing opposing ones against each other, can be said to take. It is not a question of what the relation would be if considered in some isolated aspect, but rather what is its dominant character. This, as was said in
 
 Mathews
 
 v.
 
 Livingston, supra,
 
 is a “mixed question of law and fact”. In
 
 McDowell
 
 v.
 
 Hyman, supra,
 
 the trial court in its instructions to the jury treated this question as one purely of fact and it was held that no reversible error had been committed on the trial and the court’s judgment based on the jury’s verdict was affirmed. Though we treat the question, however, not as one of fact merely but as one of
 
 *Supp. 773
 
 mixed law and fact, it is still clear that an appellate tribunal is only justified in overruling the view taken by a trial court if the factors that enter into the relation, and mark it as of the character opposite to that found by the lower court, so dominate the situation as to clearly nullify the effect of the factors opposed to them. Otherwise the question is to be determined as one of fact as to which the judgment of the trial court must be treated as concluding the matter. We think that is the case here. In other words, we do not think the factors pointing to the status of the appellants as that of tenants do so decidedly outweigh the other factors tending to characterize them as lodgers as to justify us in overruling the trial court’s conclusion as to what the fact was. It follows, then, that we must accept the determination of the municipal court that appellants were mere lodgers and invested with only such rights as belong to lodgers.
 

 (3) It is claimed in appellants’ behalf that, even though it be held that they were mere lodgers, they were entitled under section 1161 of the Code of. Civil Procedure to some sort of a notice before the instant action could properly have been instituted against them. It will be observed in this connection that the instant action purports, in its title, to be based on the forcible detainer statute which is section 1160 of the Code of Civil Procedure. The second subdivision of that section is manifestly inapplicable and, therefore, the contention must be that the cause of action exists under the first subdivision of the section which declares every person to be guilty of a
 
 forcible detainer
 
 who:
 

 “By force, or by menaces and threats of violence, unlawfully holds and keeps the possession of any real property whether the same was acquired peaceably or otherwise.’’
 

 Assuming, but not deciding, that appellants’ conduct in supplying a special policeman to guard the premises in their absence would bring their conduct within the literal purview of this language, we are yet constrained to the view that under the construction given to this statute an action for
 
 forcible detainer
 
 under it did not lie. This we say for the reason that it has been held that an action for
 
 forcible detainer
 
 may not be maintained when the defendant originally entered in pursuance of a contract with the plaintiff.
 
 (Carteri
 
 v.
 
 Roberts,
 
 140 Cal. 164, 166 [73 Pac. 818] ;
 
 Baxley
 
 v.
 
 Western Loan & Building Co.,
 
 135 Cal. App. 426, 430 [27
 
 *Supp. 774
 
 Pac. (2d) 387].) Eespondents, however, were under no inhibition to proceed under this complaint merely because they misnamed it and if it can be said to state facts that exhibit a good cause of action either in
 
 forcible detainer
 
 on the one hand or in
 
 unlawful detainer
 
 on the other a judgment based upon it may if supported by the evidence be sustained.
 

 We are in the instant case of the opinion that though apparently intended to be framed under the provisions of subdivision 1 of section 1160 of the Code of Civil Procedure, the complaint is sufficient in form to state a cause of action under the first subdivision of section 1161 of that code. While this section starts out by saying that, “A tenant of real property for a term less than life is guilty of unlawful detainer ...” (proceeding then to specify the circumstances in which he is so guilty), and while it is true that a guest or lodger is, as we have seen, no tenant, yet in subdivision 1 of the section entitled “Possession after expiration of term,” the statute proceeds to assimilate to the situation of a true tenant, others who do not occupy that status by using the language, “including the ease when the person to be removed became the occupant of the premises as a servant, employee, agent or
 
 licensee
 
 and the relation of master and servant or employer and employee or principal and agent or licensor and licensee has been lawfully terminated . . . ”. We find it laid down in 1 McAdam on Landlord and Tenant, fifth edition, page 229, that:
 

 “Guests in a hotel, boarders in a boarding house, and roomers or lodgers, so called, are generally, mere licensees and not tenants. They have only a personal contract and no interest in the realty.”
 

 So, then, though they are not tenants and though, as we have seen, their presence on the premises involved is not in strictness either a possession or an occupancy of such premises, since the possession and occupancy are in strictness all the time not in them but retained by the proprietor, yet as we have just seen, guests or lodgers" when their right to remain such has ceased, are, as having been
 
 licensees,
 
 by the above-quoted language of the statute included expressly in the category of “persons to be removed”.
 

 Coming, then, to the question of notice, it will be at once observed that though a three-day notice to pay (or vacate) is provided for in case of the class of persons described in
 
 *Supp. 775
 
 the
 
 second
 
 subdivision of said section 1161, no notice whatever is provided for as required by the
 
 first
 
 subdivision of that section except in the single case of a tenant at will, which is something wholly different from that of a licensee. We conclude, therefore, that so soon as a guest or lodger has, either by default in making payments due or otherwise, breached his contract he may by appropriate proceedings be ousted without the requirement of any advance notice. His actual right to remain having ceased, his continued presence amounts to little more than a trespass and, as said in
 
 Gladwin
 
 v.
 
 Stebbins, 2
 
 Cal. 103, 105, “it would be absurd in such a case, to require either a demand or notice to quit”.
 

 Our conclusion, then, is that the present action was properly maintained not as, according to its title, it purports to have been brought, under subdivision 1 of section 1160, but rather under subdivision 1 of section 1161 of the Code of Civil Procedure, and that the circumstance that no formal notice preceded its institution was no obstacle to its maintenance. If we are right at all in deciding that the municipal court’s determination that appellants were lodgers and not tenants must be sustained, then any other conclusion than that just announced would lead to an absurdity. It would be tantamount to saying that, though there are summary remedies available under section 1160 against intruders and under section 1161 against delinquent tenants, nothing in either of these sections is available to a hotel keeper or the proprietor of a rooming house as against a defaulting lodger and that the only courses open to such hotel keeper or lodging house proprietor are either to take the law into his own hands and forcibly remove a delinquent guest or lodger, or else for want of any statutory remedy by either a forcible detainer or unlawful detainer proceeding to be obliged to resort to the cumbrous remedy of an action in ejectment. Such a ruling would make the operation of hotels and lodging houses virtually impossible and it manifestly cannot be the law. It follows that the action of the trial court in holding all rights of appellants to further use of the apartment in question to be at an end must be sustained.
 

 (4) We think, however, that in rendering its money judgment against appellants the trial court fell into error. The evidence clearly showed that a year’s credit had by the taking of the note been extended by respondents to appellants
 
 *Supp. 776
 
 with respect to so much of the indebtedness of the latter to the former as was represented by the note, that is as to all that part of the indebtedness incurred prior to January 1, 1939.
 

 This affects all of the $399.14, exclusive of costs for which respondents had judgment in the municipal court excepting only the $45 treated as payable for January rent. As respects such remaining $45, since respondents elected to oust appellants on January 23, 1939, it follows that they cannot claim rent for the final eight days of that month which would amount to $11.31. That amount, therefore, is deductible from the $45 for which respondents would otherwise be entitled to judgment, leaving the net amount of the money judgment to which respondents are entitled $33.39.
 

 Of course, the circumstance that the remaining $354.14 for which the municipal court rendered judgment must now be excluded therefrom will not prejudice respondents in their right to bring suit thereon at the end of one year from the date of the note should default meantime be made in its payment.
 

 It is therefore ordered that the judgment of the municipal court be and the same is hereby modified by striking therefrom the paragraph in the words and figures following, to wit:
 

 “It is Further Ordered, Adjudged and Decreed by the Court that said plaintiffs have and recover of the defendants Walter Casey and Marguerite Casey, and each of them, the sum of $399.14, together with their costs and disbursements incurred in this action, which are hereby taxed in the sum of $-.”
 

 In lieu of the matter so stricken therefrom there is hereby inserted in such judgment a paragraph in the words and figures following, to wit:
 

 “It is Further Ordered, Adjudged and Decreed by the Court that the plaintiffs have and recover of the defendants Walter Casey and Marguerite Casey, and each of them, the sum of $33.39, together with their costs and disbursements incurred in this action, which are hereby taxed in the sum of $-. It is Further Adjudged and Decreed that as to all sums owing from defendants to plaintiffs for any period prior to January 1,1939, a credit of one year was extended by plaintiffs to defendants by the taking of a certain promissory note payable one year after its date, and therefore as to such sums
 
 *Supp. 777
 
 the commencement of the present action was premature, but this judgment is without prejudice to the right of plaintiffs in case of default in the payment of said sums according to the terms of said note to sue therefor when the period for which credit was allowed by the terms of said note shall have expired. ’ ’
 

 As so modified the judgment of the municipal court is affirmed.
 

 Turrentine, J., concurred.