[Crim. No. 18787. Second Dist., Div. Two. Oct. 27, 1971.]

THE PEOPLE, Plaintiff and Appellant, v.
ROGER MINERVINI et al., Defendants and Respondents.

**COUNSEL**

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, John H. Darlington, Deputy Attorney General, David D. Minier, District Attorney, and William E. Poulis, Deputy District Attorney, for Plaintiff and Appellant.

Roger Minervini, in pro. per., Robert G. Eckhoff, Public Defender, and Gilbert W. Lentz, Deputy Public Defender, for Defendants and Respondents.

**OPINION**

**COMPTON, J.**—The People endeavor to appeal from simultaneous orders suppressing certain evidence pursuant to Penal Code section 1538.5 and setting aside the information under section 995 of that code.

The respondents are charged jointly with two counts of burglary in violation of Penal Code section 459. The allegations are that they entered rooms 225 and 281 of the Pepper Tree Motel in Santa Barbara with intent to commit theft. The evidence at the preliminary examination consisted of the testimony of the desk clerk and manager of the motel and the two registration cards filled out by the respondents. The magistrate overruled constitutional and statutory (Pen. Code, § 844) objections to portions of the testimony and held respondents to answer.

In due course, respondents moved to suppress evidence and to set aside the information. The motions were heard together and submitted upon the transcript of the preliminary hearing. However, as to the motion to suppress, the transcript was augmented by brief additional testimony of the hotel manager. It was the stated intention of the trial court to "rule first on the 1538 and then consider the 995." Nonetheless, at the conclusion of

the hearing, the court announced its granting of "both motions" and, upon ascertaining the opinion of the deputy district attorney that "we would not be able to establish a corpus" without the suppressed testimony, ordered the respondents discharged.

The People timely noticed an appeal from both orders. "pursuant to Penal Code section 1238, subdivisions (1), (7) and (8)." However, they have not taken steps to obtain appellate review of the suppression order by mandate or prohibition as is permitted (and as is appropriate in usual cases) by subdivision (o) of Penal Code section 1538.5.

### The Procedural Problem

The consternation that results from the making of simultaneous, undifferentiated orders suppressing evidence and setting aside an information has been discussed, explained and criticized in numerous appellate opinions. (Particularly pertinent discussions appear in *People* v. *Superior Court (Kusano)* 276 Cal.App.2d 581, 584-586 [81 Cal.Rptr. 42]; *People* v. *Foster,* 274 Cal.App.2d 778, 781-783 [79 Cal.Rptr. 397]; *People* v. *Superior Court (MacLachlin)* 271 Cal.App.2d 338, 342-347 [76 Cal.Rptr. 712].) ■ If both motions are entertained together and the disposition is to suppress certain evidence, the indicated procedure is to postpone determination of the motion to set aside the information until the People have exhausted or waived their rights to appellate review of the suppression order. (See Pen. Code, § 1538.5, subd. (o).) If the court undertakes to dismiss the information contemporaneously with the granting of a motion to suppress such action should be taken under Penal Code section 1385, rather than section 995. This procedure permits an orderly review on appeal. (See Pen. Code, § 1238, subd. (a)(7).)

Where the defendants have successfully contended that evidence should be suppressed because of its incompetency under the Fourth Amendment and the knock-and-notice requirement of Penal Code section 844, and also have successfully argued that the evidence before the magistrate was inadequate, the appropriate appellate procedure is to entertain an appeal from the order setting aside the information under Penal Code section 1238, subdivision (a)(1) and to treat the dismissal as also having stemmed from the suppression order under Penal Code section 1238, subdivision (a)(7). (*People* v. *Superior Court (Kusano) supra,* at p. 588.) For reasons which will become apparent, we do so in this instance.

### The Evidence

According to the testimony of the desk clerk of the motel, the respondents appeared together in the lobby at about 11:30 in the evening of April 25,

1970. They asked him if any rooms were available and if they could look at one. The clerk gave them the key to room 281. They returned and requested two rooms close to one another. Zaczynski filled out a registration card for room 281 using the name "Walter Gordon." Respondent Minervini used the name "I. George" in signing a card for room 225. The clerk asked them about the automobile they were driving and, in accordance with their response, noted upon the cards the description of a Pontiac with Ohio license number AL 4710. Each of them paid for their rooms in cash.

The testimony affords no inference as to whether the clerk was prescient or merely perceptive, but it is apparent that he suspected the respondents from the outset. He was aware that, "We [he and other motel operators in the area] have had trouble in the past with stolen TV sets." He followed them from the office in an effort to check the license number of their Pontiac but he observed persons he believed to be them driving off in a Plymouth. He attempted to verify the residences given by them by calling Ohio and Los Angeles information and found that neither respondent was listed at the residences given. He then called the manager, who was not present at the motel, and reported his suspicions. He was instructed to call other local motels to ascertain whether persons of the respondents' descriptions had registered at those motels within the last hour or two. He was also told to call the manager again upon the respondents' return.

The clerk later noticed that a light in room 281 was on and went looking for the described Pontiac. He located no such vehicle, but in the back of room 281 he noticed the Plymouth that he thought respondents were using and ascertained that its hood was warm. On his return to the office, Minervini entered and asked where cigarettes could be purchased. Shortly thereafter he noticed Minervini on the balcony apparently watching him and observed that Zaczynski was "carrying the set downstairs . . . carrying a large box which appeared to be a television set down the stairs." He observed Zaczynski carry the box behind the building and again called the manager and told him that he suspected that the sets were being taken. He then received a call from the police department "stating that they had the place surrounded" and, at about that time, a police car drove up as did the manager.

It was subsequently established that the manager had called the police, but the number of officers or cars that arrived was not indicated by the evidence. The manager testified that one car was there as he arrived and that one other came thereafter. In any event, he conversed with one officer and the clerk, and they went around the building to look for respondents' vehicle. Not finding it, they went to room 281 (for which Zaczynski had registered). The manager opened the door with his key and noted that the

television set was missing, an observation which could be made without entering the room. They again walked around the motel looking for respondents' car and again were unsuccessful. The manager then decided to go to room 225 (for which Minervini had registered). As they ascended the steps, they encountered Minervini coming down. The clerk identified him as one of the registrants and he was stopped by the police.

The manager continued to room 225. He did not notice whether he was followed by an officer or not. He opened the door with his key and was startled to see Zaczynski (who had registered for room 281 and who had previously disappeared behind the building). He could see that the television set for that room was unsecured from the furniture and was inside a cardboard box on top of the bed. Zaczynski was detained by an officer in the doorway or hallway to that room.

Neither the manager nor any police officer knocked or announced his presence before the manager opened the door to either of the rooms.

### THE FOURTH AMENDMENT AND PENAL CODE SECTION 844

The respondents' contention, accepted by the trial court, is that the manager's opening of the doors to rooms 281 and 225 infringed their immunity from unreasonable searches afforded by the Fourth Amendment and failed to comply with the knock-and-notice requirement of Penal Code section 844. After considerable deliberation of the point, the trial court concluded that the matter to be excluded and suppressed is the manager's testimony as to his observations within the rooms. As this testimony is limited to the absence of the television set in room 281 and the incipient absence of the one in room 225, one cannot avoid wondering whether the portent of that evidence would not ultimately have reached the motel personnel and the police in all events. Respondents' occupancies would have terminated within a matter of hours and certainly maids would have routinely entered the rooms during the morning. Thus it would appear the suppression of this evidence would not be fatal to a prosecution. Surely at this point in time the absence of the television sets could be established apart from the questioned testimony.

It is to be noted at the outset that at the time the manager opened room 281 he had reason to suppose that the registrant (Zaczynski) had left under circumstances (bearing the television set) indicating a substantial possibility that he would not return. At the time he opened room 225 he knew that the registrant (Minervini) was in police custody.

Respondents' contention that the manager as a private person (that is,

apart from any police participation) violated their rights by not knocking and announcing his purpose is totally lacking in merit.

Section 844 of the Penal Code does contemplate that in arrests by private persons, such person "may break open the door or window of the house in which the person to be arrested is . . . after having demanded admittance and explained the purpose for which admittance is desired."

However, the unimpeached and uncontradicted testimony of the manager was that he had no intention of arresting anyone either in going to the motel or on opening the rooms. Indeed, he was unaware that he had a privilege to arrest anyone, and it is clear that he did not do so.

Regardless, the Fourth Amendment and its progeny, the exclusionary evidence rule, do not apply to searches by private individuals. "untainted" by "state action" (*Burdeau* v. *McDowell,* 256 U.S. 465 [65 L.Ed. 1048, 41 S.Ct. 574, 13 A.L.R. 1159]; *Stapleton* v. *Superior Court,* 70 Cal.2d 97, 100 [73 Cal.Rptr. 575, 447 P.2d 967]). Thus the failure of a private citizen to comply with section 844 of the Penal Code under such circumstances would not result in invalidating evidence seized by him.

Of course, if the manager acted as respondents contend, solely as the "agent" of the police without personal initiative and absent any independent right of access available to him, the exclusionary rule would be pertinent. (*Priestly* v. *Superior Court,* 50 Cal.2d 812, 815 [330 P.2d 39]; *People* v. *Urfer,* 274 Cal.App.2d 307, 310 [79 Cal.Rptr. 60].) The evidence is clear, however, that he went to the rooms and opened them on his own initiative. He had had no particularized conversation with any of the officers and had not told them of his intention to open the rooms. Under these circumstances, his actions were not those of an "agent" of the police. (*People* v. *Anderson,* 9 Cal.App.3d 80, 84 [88 Cal.Rptr. 4]; *People* v. *Coleman,* 263 Cal.App.2d 697, 703 [69 Cal.Rptr. 910].) The decisions cited and relied upon by respondents (e.g., *Stapleton* v. *Superior Court, supra*) which deal with instances in which the police request the private person's improper search or, having knowledge of it, stand by and fail to protect the victim's rights, simply are not pertinent to the facts in this case.

More important however, is the rule that if the manager had a right to enter the rooms because of circumstances affecting the relationship between him and the defendants and between him and his property, that right would not be diminished if he sought police assistance in exercising that right or even if he was encouraged by the police to so exercise it. (See *People* v. *Plane,* 274 Cal.App.2d 1 [78 Cal.Rptr. 528]; *People* v. *Raine,* 250 Cal.App.2d 517 [58 Cal.Rptr. 753]; *People* v. *Henning,* 18 Cal.App.

3d 872 [96 Cal.Rptr. 294].) In the case at bench, it is significant that any "search" by the manager was not conducted to discover or examine the effects of guests, or to observe their activities, but to secure the premises themselves and to prevent theft of property belonging to the motel. (Cf. *Chapman* v. *United States,* 365 U.S. 610 [5 L.Ed.2d 828, 81 S.Ct. 776]; *Krauss* v. *Superior Court,* 5 Cal.3d 418 [96 Cal.Rptr. 455, 487 P.2d 1023].)

There is a limited amount of authority as to the powers and privileges of hotel and motel personnel, with or without the cooperation of the police, to resist and prevent the sort of marauding and depredation that was occurring in this instance. In view of the duty of such establishments to serve the public and their susceptibility to such crime, reciprocal prerogatives ought to be acknowledged.

 It is abundantly clear that hotel management retains control over all premises including rooms occupied by guests. (*Fox* v. *Windemere Hotel Apart. Co.,* 30 Cal.App. 162 [157 P. 820]; *Roberts* v. *Casey,* 36 Cal.App.2d Supp. 767 [93 P.2d 654].)

 The customer in a motel is a "lodger" or a guest, not a tenant. (To the extent that there is a technical distinction between lodger and guest, that difference is not significant here.) He has a personal contract and no interest in the realty. The contract contains certain implied reciprocal rights and duties. As a minimum the guest impliedly covenants not to damage or steal motel property. A breach of such a covenant gives the proprietor a right to treat the contract of occupancy as terminated.

Thus a guest may be excluded from the premises and his privilege of occupancy forfeited because of his unlawful conduct. (43 C.J.S. 1151.)

As a method of preserving his rights in the contract the proprietor retains rights of reasonable access to prevent damage to or destruction of the property.

 "A 'lodger' has only the right to use the premises, subject to the landlord's retention of control and *right of access to them.*" (Italics added.) (*Stowe* v. *Fritzie Hotels, Inc.,* 44 Cal.2d 416, at p. 421 [282 P.2d 890].) Inspection of the property in the face of information reasonably indicating an ongoing burglary or theft was within the concept and bounds of reasonable access by management.

In the case at bar it is questionable whether these respondents acquired the status of a genuine "guest." Their purpose in registering and gaining entry into the rooms was neither shelter nor sanctuary, but the opportunity to commit theft.

■ A person does not become a guest by obtaining a room at an inn solely for the accomplishment of an unlawful purpose. (43 C.J.S. 1141.)

Thus, the manager had a right under the circumstances to enter the rooms and to treat the occupancy of respondents as terminated. It is clear that a claimed agency relationship between police and management could not extinguish this right.

We observe in passing that Zaczynski in the act of burglarizing a room other than the one in which he was registered had absolutely no standing to claim the shelter of section 844 or any right of privacy therein.

The philosophy expressed in several decisions (*People* v. *Sanchez,* 2 Cal.App.3d 467, 473 [82 Cal.Rptr. 582]; *People* v. *Ortiz,* 276 Cal.App. 2d 1, 5 [80 Cal.Rptr. 469]), is pertinent: "A trespasser—or a burglar— cannot make another man's home his castle."

The conduct of the clerk, manager and police was above reproach, and no evidence obtained by them was subject to exclusion or suppression.

### THE ADEQUACY OF THE EVIDENCE

■ Given the constitutional competency of all testimony adduced at the preliminary examination, there was no substantial question as to the existence of reasonable and probable cause to hold the respondents to answer. The clerk and manager had observed, either directly or by way of overwhelming inference every element of a theft and burglary.

The fact that respondents had endeavored to acquire a certain right of occupancy in the rooms paying therefor and registering does not militate against a finding that their entry into the rooms with the intent to commit the thefts violated section 459 of the Penal Code.

Their false registration and the payment for one night's lodging was simply an investment in the facilitation of their larcenous enterprise. (See *People* v. *Sparks,* 44 Cal.App.2d 748 [112 P.2d 974]; and *People* v. *Ferns,* 27 Cal.App. 285 [149 P. 802].)

The order setting aside the information is reversed. The appeal from the order suppressing evidence is considered to have been taken under paragraph (7) of subdivision (a) of Penal Code section 1238, and that order is reversed.

Roth, P. J., and Fleming, J., concurred.