Filed 7/19/18; Certified for Publication 8/8/18 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PEDRO RODRIGUEZ,<br><br>    Defendant and Appellant. | D071405<br><br><br><br>(Super. Ct. No. SCN333477) |


APPEAL from a judgment of the Superior Court of San Diego County, K. Michael Kirkman, Judge. Affirmed.


Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

Pedro Rodriguez met Rebecca on an online dating application when he was 41 and she was 16 years old. Rodriguez arranged an in-person meeting with Rebecca a few weeks later and, on numerous occasions over the next several months, engaged in various sexual acts with her in hotel rooms he had rented. A jury convicted Rodriguez of 11 offenses involving unlawful sexual conduct with a minor, one count of burglary in violation of Penal Code section 459,[1] and one count of attempting to dissuade a witness from reporting a crime in violation of section 136.1, subdivision (b)(1).

Rodriguez contends there was insufficient evidence to support the conviction for burglary because section 459 requires an invasion of a possessory interest in the subject room or building and, much like the lessee of an apartment, he had an unconditional possessory interest in the hotel room he rented. He asserts the trial court should have either dismissed the charge or provided the jury with a pinpoint instruction regarding the significance of any such possessory interest. To the extent this court concludes there is a relevant distinction between his possessory interest in the hotel room and a homeowner or lessee's possessory interest in a home or apartment, Rodriguez argues the result would be a violation of his constitutional right to equal protection. In addition, Rodriguez contends there was insufficient evidence to support the conviction for attempting to dissuade a witness pursuant to section 136.1, subdivision (b)(1) because any attempt he made to dissuade Rebecca occurred only after she made an initial report to the police.

---

1    All further unspecified statutory references are to the Penal Code.

We conclude there was sufficient evidence to support both convictions, that the court did not err in its refusal to dismiss the burglary charge or its instruction to the jury concerning burglary, and that the equal protection clause is not applicable because individuals renting hotel rooms are not similarly situated to those owning or leasing a residence. We therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Rebecca went on a trip to San Francisco with a school group in January 2014 when she was 16 years old. While on the trip, she logged into a social media dating application on her phone that allowed her to create a profile and locate other individuals in the same geographic area. Using the application, Rebecca made contact with an individual identifying himself as "Max Powers." "Max" initially told Rebecca he was 16, but she eventually learned his real name was Pedro Rodriguez and that he was actually 41 years old.

Rebecca and Rodriguez continued talking on various messaging applications and exchanged telephone numbers within a couple of weeks. By mid-February, Rebecca had sent Rodriguez nude photographs of herself at his request. Around that time, they also started discussing meeting in person, but Rebecca told Rodriguez that she did not want to have sex until marriage and that she did not believe in using birth control, due to her religious beliefs.

On February 22, 2014, Rodriguez drove from San Francisco to San Diego County to see Rebecca. Rodriguez rented a hotel room and then drove to Rebecca's neighborhood. He parked his car in a cul-de-sac behind Rebecca's house and she snuck

3

out through the backyard to ensure her parents would not see them. They drove around running errands together for a while, and then drove to the hotel Rodriguez was staying at so he could get a different shirt from his room. Rodriguez asked Rebecca to come up to the room but she said she did not feel comfortable and waited for him in the car. When Rodriguez returned, he continued to pressure her to go up to the hotel room, saying that he did not think she trusted him, and Rebecca eventually agreed. As soon as they entered the room Rodriguez grabbed her and kissed her. He then removed her clothes and engaged in various sex acts with her.

Rodriguez drove back to San Diego County on March 8, 2014, and rented a room at the same hotel. He took Rebecca out to breakfast, then back to the hotel, where he took her clothes off, orally copulated her, and engaged in intercourse with her. Rebecca took several photographs during the encounter, including one of Rodriguez orally copulating her and one of the two of them lying in bed together without any clothes.

Over the course of the next several months, Rodriguez met Rebecca and engaged in various sex acts with her on several other occasions. At their last meeting, in May 2014, Rodriguez was upset that Rebecca had been talking and sending pictures to another individual—a boy closer to her own age—and told her if she did not stop, he would tell her mother everything they had been doing and would send her mother illicit pictures and videos that Rebecca had sent to him. They continued to argue throughout the following week. Rebecca felt Rodriguez was blackmailing her with his threats so she decided to tell her mother what had happened with Rodriguez herself. She gave her mother a phone

4

that Rodriguez had given her so they could communicate without anyone knowing and told her what had been happening.

Shortly thereafter, Rebecca's mother took her to the police station to make a report. The next day, after discovering Rebecca had talked to the police, Rodriguez sent Rebecca an e-mail asking her to sign a statement that said she was forced to give an inaccurate statement to the police after being told she was a party to a crime, and that she only knew Rodriguez from an online dating application. Rebecca did not sign the statement and, instead, spoke with a detective from the police department several more times and went with the detective to identify each of the hotel rooms she had visited with Rodriguez. However, she also remained in contact with Rodriguez, both directly and through an intermediary, and he continued to threaten her and pressure her to change her story.

The police arrested Rodriguez in June. While in jail, he had his brother send another phone to Rebecca so he could communicate with her. He also moved to represent himself at the preliminary hearing and rehearsed the questions he planned to ask Rebecca over the phone with her. By the time of the preliminary hearing in August, Rodriguez had convinced Rebecca to change her testimony to say that she never had a sexual relationship with him. However, the court did not find her testimony credible and allowed the case to continue.

After the preliminary hearing, Rodriguez moved to set aside the burglary charge pursuant to section 995. He argued he could not be guilty of burglary in violation of section 459 because, in accordance with *People v. Gauze* (1975) 15 Cal.3d 709 (*Gauze*),

section 459 requires an entry that invades a possessory right and he had an unconditional possessory right to the hotel room he rented. The People opposed the motion and the trial court denied it.

In late 2014, the police discovered Rodriguez and Rebecca were still in contact and, in January 2015, they seized three phones from Rebecca's home, including two that Rodriguez had sent to her. Rebecca had no further contact with Rodriguez after that and, several months later, she testified at trial consistent with her original report to the police; specifically, she stated that Rodriguez did engage in sexual acts with her on several occasions in various hotel rooms he had rented, including on March 8, 2014. Rodriguez also testified and admitted he had a relationship with Rebecca but claimed it was never sexual.

At the conclusion of the case, Rodriguez asked the court to dismiss all of the charges pursuant to section 1118.1, which the People opposed. The court granted the motion as to count 5 (sodomy of a person under the age of 18 in violation of § 286, subd. (b)(1)) after finding Rebecca's testimony was incomplete as to that particular charge, but denied it as to all other charges.

The jury found Rodriguez guilty on all remaining charged offenses, including one count of burglary in violation of section 459, and one count of attempting to dissuade a witness from reporting a crime in violation of section 136.1, subdivision (b)(1). Rodriguez filed a motion for a new trial, which the trial court denied.

Rodriguez appeals.

6

DISCUSSION

I. *Burglary Conviction*

Rodriguez contends he could not have committed burglary by entering the hotel room because he had an unconditional possessory interest in the room during the rental period. He therefore asserts there was insufficient evidence to support the burglary conviction, and that the trial court should have granted either his section 995 motion to set aside the information prior to trial or his section 1118.1 motion to dismiss the burglary charge after the trial. In the alternative, he argues the court should have provided a pinpoint instruction to the jury regarding the significance of a possessory interest with respect to the burglary charge, and that the conviction must be reversed as a result. In addition, Rodriguez asserts any determination that he did not have an unconditional possessory interest in the hotel room would violate his constitutional right to equal protection by treating him differently than a homeowner or lessee. In response, the People argue Rodriguez waived his argument with respect to at least the section 995 motion, and that the trial court did not err in any event by denying the motions or instructing the jury as to the burglary charge.

A. *Court's Refusal to Dismiss the Burglary Charge*

Rodriguez combines his arguments that there was insufficient evidence to support the burglary conviction and that the court erred in failing to dismiss the charge based on either his section 995 or section 1181.1 motion in his briefing on appeal, and we consider the arguments collectively as well.

1. *Waiver*

We turn first to the People's assertion Rodriguez waived his argument that the trial court erred by denying his section 995 motion to dismiss the burglary charge. The People assert section 999a required Rodriguez to seek a writ of prohibition within 15 days of the trial court denying his section 995 motion, and that his failure to do so precludes him from raising the argument on appeal.

The People rely on *People v. Alcala* (1984) 36 Cal.3d 604, in which the California Supreme Court concluded arguments concerning a lack of probable cause at a preliminary hearing are waived if not timely pursued prior to trial, but they misinterpret the court's conclusion therein. (*Id*. at p. 628.) The court in *Alcala* made that statement in the context of explaining that failures of evidence at the preliminary hearing are not jurisdictional defects because they are waived for all purposes if not raised prior to trial. (*Ibid*.) Here, Rodriguez *did* raise the issue prior to trial, pursuant to the mechanism for doing so set forth in section 995, and therefore complied with the court's statement in *Alcala*. (§ 995.) While section 999a sets forth the timeframe for filing a writ of prohibition challenging the trial court's denial of a section 995 motion prior to trial, neither *Alcala* nor any other authority requires a defendant to file such a writ to preserve the argument on appeal. Accordingly, we conclude Rodriguez has not waived his argument that the trial court erred by denying his section 995 motion.

2. *Merits*

Turning to the merits, a person commits burglary in violation of section 459 when he or she enters a house, room, apartment, or other type of structure enumerated in

8

section 459 with the intent to commit a felony. (§ 459.) Here, the evidence presented at trial established Rodriguez rented a hotel room on March 8, 2014, and entered the room with the intent to commit felonious acts—specifically, the underlying felony charges on which he was convicted. While Rodriguez argues there is insufficient evidence to support the verdict, he does not dispute the evidence concerning the hotel room or the verdicts on the underlying felonies. Instead, his sole contention is that he could not have committed burglary pursuant to section 459 because he had an unconditional possessory interest in the room. This is primarily a legal question that we review de novo.[2] (See *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.)

In *Gauze, supra*, 15 Cal.3d 709, the California Supreme Court discussed the legislative history of section 459 and concluded "the Legislature has preserved the concept that burglary law is designed to protect a possessory right in property, rather than broadly to preserve any place from all crime," and that, therefore, a "burglary remains *an entry which invades a possessory right in a building*." (*Id.* at pp. 713-714, italics added.) As a result, an individual does not violate section 459 if he or she has an unconditional

---

[2] We review assertions the evidence was insufficient for substantial evidence. (*People v. Casares* (2016) 62 Cal.4th 808, 823 (*Casares*).) However, as stated here, Rodriguez does not seriously contend the evidence was insufficient, except insofar as it did not establish he invaded a possessory right in a building when he entered his own hotel room. Thus, to the extent we conclude, as we do, that one does not have an unconditional possessory interest in a rented hotel room and can commit burglary in violation of section 459 by entering one's own hotel room with the intent to commit a felony, we likewise conclude substantial evidence supports the burglary conviction, and that the court did not err by denying Rodriguez's sections 995 and 1118.1 motions.

possessory right to enter as the occupant of the structure.  (*People v. Salemme* (1992) 2 Cal.App.4th 775, 781 (*Salemme*).)  Since this pronouncement in *Gauze*, appellate courts in California have concluded an individual can commit a burglary by entering a hotel room with the intent to commit a felony when the hotel room was rented by the victim, but have not directly addressed whether the same is true in the case of a hotel room rented by the alleged burglar.  (See *People v. Villalobos* (2006) 145 Cal.App.4th 310, 316-317 (*Villalobos*), but see *People v. Minervini* (1971) 20 Cal.App.3d 832, 840-841 (*Minervini*) [predating *Gauze* but concluding the fact that defendants acquired and paid for hotel rooms did not mitigate against a finding that they violated § 459 by entering the rooms with the intent to commit theft].)

The question the court addressed in *Gauze* was whether an individual could commit burglary in his or her own home.  (*Gauze, supra*, 15 Cal.3d at p. 711.)  There, Gauze shared an apartment with two other roommates and, after arguing with one of the roommates at another location earlier in the day, entered the shared apartment with a shotgun and shot his roommate.  (*Ibid.*)  The court concluded Gauze did not violate section 459 by entering the apartment because he had an absolute right to enter his own apartment, even if for a felonious purpose.  (*Gauze*, at p. 714.)  In so holding, the court explicitly distinguished another case, *People v. Barry* (1892) 94 Cal. 481, and its progeny, in which the court had previously concluded a person *could* be convicted of burglary of a store even though he or she entered during regular business hours and therefore had an implied invitation to be in the store as a member of the public.  (*Gauze*, at p. 713; see *People v. Deptula* (1962) 58 Cal.2d 225, 226-228 [applying *Barry* and

10

concluding a manager violated § 459 when he entered the business with the intent to commit a felony despite having his own set of keys to the business].)  While the defendant's invitation to enter the store in *Barry* was presumably limited to entry for legal purposes, the court concluded Gauze had an *unconditional* possessory right to enter his own apartment for any reason and regardless of his intent.  (*Gauze*, at pp. 714-715.)

However, in a subsequent case, the court differentiated between the unconditional possessory interest at issue in *Gauze* and consent, explaining, "one may be convicted of burglary even if he enters [a room or building] with consent, provided he does not have an *unconditional* possessory right to enter."  (*People v. Pendleton* (1979) 25 Cal.3d 371, 382 (*Pendleton*), italics added.)  Thereafter, in *Salemme*, the court further clarified the distinction between possessory interest and consent and summarized the state of the law as follows:  "a person who enters a structure enumerated in section 459 with the intent to commit a felony is guilty of burglary *except* when he or she (1) has an unconditional possessory right to enter as the occupant of that structure or (2) is invited in by the occupant who knows of and endorses the felonious intent."  (*Salemme, supra*, 2 Cal.App.4th at p. 781 [concluding defendant violated § 459 despite homeowner's consent to entry because homeowner had no knowledge of defendant's felonious intent].)  Consistent with these cases, various appellate courts, in other more recent cases, have upheld burglary convictions where the defendant entered a building or room with the intent to commit a felony and without an *unconditional* possessory interest.  (See, e.g., *Salemme*, at p. 781; *People v. Ulloa* (2009) 180 Cal.App.4th 601, 606-607 [defendant guilty of burglary when he entered apartment he had coleased with his spouse because

11

there was substantial evidence he had moved out and no longer had an unconditional possessory interest]; *People v. Clayton* (1998) 65 Cal.App.4th 418, 421-424 [defendant convicted of burglary when he entered a home with the intent to kill the victim even though husband who also lived in the home gave defendant a key].)

Here, Rodriguez claims he had an unconditional possessory interest in the hotel room he rented akin to that of a homeowner or lessee of a residence, but the law does not support his assertion. Instead, California law has long recognized a distinction between the possessory rights a tenant has in a home or apartment versus those a temporary lodger has in a rented room in a hotel, motel, or similar establishment; while a tenant has exclusive legal possession of the premises, a lodger only has a right to use the premises, subject to the renter's control and right of access. (See *Stowe v. Fritzie Hotels, Inc.* (1955) 44 Cal.2d 416, 421 (*Stowe*); *Bullock v. City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1097 (*Bullock*) [possessory interest of lodger "vastly inferior" to tenant]; *Roberts v. Casey* (1939) 36 Cal.App.2d Supp. 767, 771 (*Roberts*) [guests in a hotel have a contractual right but no interest in the realty].) Thus, at most an individual who rents a hotel room may have some temporary possessory interest in that room, but that interest is not equivalent to the possessory interest of a homeowner or lessee and is not unconditional. Accordingly, Rodriguez did not have an unconditional possessory interest in the hotel room he rented and the possessory interest exception set forth in *Gauze* is inapplicable.

Rodriguez argues he had an unconditional right to possession during the rental period because he alone had the legal right to come and go from the hotel room. We

12

disagree.  Presumably the hotel maintained access to the room as well—for such purposes as housekeeping and maintenance—and the hotel had the right to eject him from the room should he engage in illegal activity therein.  (See *Minervini, supra*, 20 Cal.App.4th at p. 840 [guest may be excluded from hotel premises and his or her privilege of occupancy forfeited because of unlawful conduct].)  Rodriguez asserts a hotel's ability to eject a guest is no different than a lessor's ability to evict a tenant, but evicting a tenant involves a complex legal process aimed in part at protecting the tenant's occupancy rights while ejecting a hotel guest does not.  (See, e.g., Code Civ. Proc., § 1161; *Roberts, supra*, 36 Cal.App.3d Supp. at p. 771 [hotel guest's rights are contractual].)  While Rodriguez may have had the hotel's *consent* to enter and use the room during the rental period, consent is not equivalent to a possessory interest and, in any event, the consent was not given with knowledge of Rodriguez's felonious intent.  (*Pendleton, supra*, 25 Cal.3d at p. 382; *Salemme, supra*, 2 Cal.App.4th at p. 781; *People v. Sherow* (2011) 196 Cal.App.4th 1296, 1304.)  Regardless, Rodriguez did not argue a consent defense in the trial court, nor does he expressly raise the issue of consent on appeal.

Rodriguez also points the court to a number of cases regarding a hotel guest's expectation of privacy, but those cases are not instructive.  The right to privacy at issue in those cases derives from the right to be free of unlawful searches and seizures set forth in the Fourth Amendment to the United States Constitution, and Rodriguez provides no authority indicating that right is dependent on a possessory interest, let alone an unconditional possessory interest.  (See *Rakas v. Illinois* (1978) 439 U.S. 128, 146-147 [suggesting one may have a right to privacy even absent a possessory interest in the

13

searched property]; *People v. Koury* (1989) 214 Cal.App.3d 676, 686 [possessory interest not required to assert a reasonable expectation of privacy under the Fourth Amendment]; *People v. Zabelle* (1996) 50 Cal.App.4th 1282, 1286 [hotel room is considered a dwelling *for the purpose of the Fourth Amendment*]; see also *Stoner v. California* (1964) 376 U.S. 483, 489; *People v. Superior Court* (*Walker*) (2006) 143 Cal.App.4th 1183, 1206.) Instead, the right to privacy in a hotel room arises primarily from its status as a sleeping place, where one is vulnerable and cannot monitor the safety and security of one's own belongings.  (*Villalobos, supra*, 145 Cal.App.4th at p. 319.)  There was no search or seizure at issue in the present case and the mere fact that Rodriguez had some expectation of privacy in the hotel room he rented does not indicate he also had an *unconditional* possessory interest in the room.

Based on the foregoing, we conclude Rodriguez did not have an unconditional possessory right to his hotel room and, thus, substantial evidence supports the burglary conviction.  Accordingly, we conclude the trial court did not err in refusing to grant Rodriguez's motions to dismiss the charge pursuant to sections 995 or 1181.1.

B.  *Jury Instruction*

Alternatively, Rodriguez contends the trial court should have given a pinpoint instruction to the jury regarding the significance of an unconditional possessory interest to the elements of section 459.

The People contend Rodriguez forfeited this argument as well and he concedes he did not request a pinpoint instruction, but argues the trial court had a sua sponte duty to provide the instruction because it concerned a general principle of law relevant to the

14

issues raised by the evidence. (See *People v. Martinez* (2010) 47 Cal.4th 911, 953; *People v. Earp* (1999) 20 Cal.4th 826, 885.) However, the cases Rodriguez primarily relies on relate to the trial court's sua sponte duty to instruct on defenses where there is sufficient evidence to support the defense and, similarly, lesser included offenses when the evidence raises a question of whether the elements of the charged offense are met. (*Martinez*, at p. 953; *Earp*, at p. 885; *People v. Breverman* (1998) 19 Cal.4th 142, 157.) Pinpoint instructions, on the other hand, relate to the elements of a charged offense and, specifically, whether the prosecution has met its burden of proof as to each such element. (*People v. Anderson* (2011) 51 Cal.4th 989, 996-997 (*Anderson*).) Pinpoint instructions must be given only upon request, and the trial court has no sua sponte obligation to give them absent such a request. (*Ibid*.; *People v. Hernandez* (2010) 183 Cal.App.4th 1327, 1331 ["Once the trial court adequately instructs the jury on the law, it has no duty to give clarifying or amplifying instructions absent a request."].)

Here, the court instructed the jury as to the elements of burglary using the standard instruction.[3] Much of the discussion regarding jury instructions was held off the record, but Rodriguez does not contend that he objected to the form of the burglary instruction and concedes he did not ask for a pinpoint instruction regarding possessory interest. Moreover, in his closing statement, defense counsel did not argue the prosecution had

---

[3]     The court instructed the jury, in part: "[t]he defendant is charged in Count 3 with burglary in violation of . . . section 459. To prove the defendant is guilty of this crime, the People must prove that: The defendant entered a building/room; and, when he entered a building—within the building or room, he entered and intended to commit unlawful sexual intercourse with a minor more than three years younger or oral copulation with a person under 18."

failed to prove the burglary charge based on his alleged possessory interest in the hotel room, and instead asserted no sexual conduct occurred between Rodriguez and Rebecca in the first instance. Thus, the court had no obligation to give a pinpoint instruction on possessory interest.

Regardless, as we have concluded *ante*, in section I.A., Rodriguez did not have an unconditional possessory right to the hotel room and the prosecution presented substantial evidence to support each element of the burglary charge. Therefore, we conclude the trial court did not err by failing to provide a pinpoint jury instruction on possessory interest and, even if the court had erred, any such error was harmless. (*Anderson, supra*, 51 Cal.4th at pp. 996-997; see *People v. Merritt* (2017) 2 Cal.5th 819, 831 [failure to instruct on an element of a charged offense subject to harmless error analysis].)

C. *Equal Protection*

Finally, Rodriguez asserts any distinction this court has drawn between the possessory interest he had in the hotel room he rented and the possessory interest a homeowner or lessee has in a home or apartment violates his constitutional right to equal protection. We disagree.

To prevail on an equal protection claim, the defendant must show that the state has adopted a classification that affects two or more similarly situated groups unequally. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) Here, as discussed, California law has long recognized a distinction between the rights of a long-term tenant and a temporary lodger. (See *Stowe, supra*, 44 Cal.2d at p. 421; *Bullock, supra*, 221

16

Cal.App.3d at p. 1097; *Roberts, supra*, 36 Cal.App.3d Supp. at p. 771.) Accordingly, an individual renting a hotel room—particularly when, as is the case here, the room is rented for a short period and is not used as a residence—is not similarly situated to a homeowner or lessee of a home or apartment, and the equal protection clause does not apply.

Regardless, even if individuals renting hotel rooms and homeowners or lessees were similarly situated, individuals renting hotel rooms are not members of a protected class. Therefore, Rodriguez would need to show the allegedly disparate treatment of hotel room renters bears no rational relationship to a legitimate stated purpose. (See *People v. Hofsheier* (2006) 37 Cal.4th 1185, 1200.) To the contrary, precluding individuals from entering a rented hotel room with the intent to commit a felony serves the public interest of protecting citizens by discouraging criminals from utilizing hotel rooms in areas where they are unknown and less likely to be recognized to carry out criminal conduct, as Rodriguez did in the present case. Accordingly, Rodriguez cannot establish a claim for equal protection.

II. *Dissuading a Witness*

Rodriguez also contends there was insufficient evidence to support his conviction on the charge of attempting to dissuade a witness from reporting a crime in violation of section 136.1, subdivision (b)(1). He argues that the only evidence the prosecutor presented related to actions he took after Rebecca made her initial report to the police, that the statute requires an attempt to prevent the initial reporting of a crime, and that we must therefore reverse the conviction. We review assertions the evidence was insufficient to support the conviction for substantial evidence, and review any related

17

issues of statutory interpretation de novo. (*Casares, supra*, 62 Cal.4th at p. 823; *Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1247.)

Section 136.1, subdivision (b)(1) makes it a crime to dissuade the victim of a crime, or a witness, from "[m]aking any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge." (§ 136.1, subd. (b)(1).) Thus, a plain reading of the statute includes *any* report of a crime to a law enforcement officer, including both the initial report and additional information about the offense provided thereafter. (See *People v. Fernandez* (2003) 106 Cal.App.4th 943, 948 (*Fernandez*).) Accordingly, an attempt to dissuade a witness from making a future or additional report to the police is sufficient to sustain a conviction pursuant to section 136.1, subdivision (b)(1). (*People v. Pettie* (2017) 16 Cal.App.5th 23, 54-55.)

Here, the prosecution presented evidence Rodriguez attempted to dissuade Rebecca immediately after he found out she made an initial report to the police. Specifically, the day after Rebecca went to the police, Rodriguez asked her to sign a statement indicating she was pressured to make an inaccurate report to the police and that she only knew him through a dating application. Rebecca did not sign the statement and, instead, continued talking with the police, providing additional information and identifying the specific locations where the crimes occurred. During this time, Rodriguez continued to pressure and threaten Rebecca, causing her to feel "overwhelmed and stressed out and scared." Although the evidence showed Rodriguez continued to pressure Rebecca up until the preliminary hearing—perhaps to explain why she testified

18

inconsistently at that hearing—the prosecution relied primarily on the e-mail and early threats as a basis for the charge of attempting to dissuade a witness. The evidence related to those early attempts to dissuade Rebecca from continuing to provide information regarding the crimes to the police is sufficient to support the conviction pursuant to section 136.1, subdivision (b)(1).

Rodriguez contends this case is akin to *Fernandez*, in which the court concluded the defendant did not violate section 136.1, subdivision (b)(1) by attempting to dissuade a witness from testifying, but it is not. (See *Fernandez, supra*, 106 Cal.App.4th at p. 945.) The court in *Fernandez* concluded the defendant did not violate section 136.1, subdivision (b)(1) because testimony was not the same as "reporting" and the "detailed and comprehensive statutory scheme for penalizing the falsification of evidence and efforts to bribe, influence, intimidate or threaten witnesses" required the court to construe the individual subdivisions of the statute narrowly. (*Id*. at p. 948.) Here, as discussed, the People did not rely on Rodriguez's attempts to dissuade Rebecca from testifying, but instead asserted he violated section 136.1, subdivision (b)(1) by attempting to dissuade Rebecca from making further reports to the police in the very early days of the investigation. No other subdivision of section 136.1, or any related statute, covers attempts to dissuade a victim from providing additional information to the police after the initial reporting but before the defendant's arrest, and certainly the legislature did not intend to permit intimidation of a victim or witness solely during that time. Thus, we decline to extend the reasoning of the court in *Fernandez* to interpret section 136.1, subdivision (b)(1) as narrowly as Rodriguez suggests.

19

Rodriguez also asserts his actions are distinguishable from those of the defendant in *People v. Navarro* (2013) 212 Cal.App.4th 1336, wherein the defendant took a phone from the victim to prevent her from calling the police. (*Id.* at p. 1349.) Although the facts of the present case do differ from *Navarro*, there is more than one way for a given defendant to violate a given statute and, here, as discussed, there was substantial evidence indicating Rodriguez attempted to dissuade Rebecca from making further reports to the police. In any event, the court in *Navarro* also found the defendant there violated section 136.1, subdivision (b)(1) when he later threatened the victim and told her to tell the police everything was fine after she called 911 on another telephone line. (*Navarro*, at pp. 1343, 1349.) Thus, if anything, *Navarro* supports the conclusion that it is a violation of section 136.1, subdivision (b)(1) to dissuade a witness from *continuing* to report a crime, even after the initial report has been made.

We therefore conclude substantial evidence supports the conviction of attempting to dissuade a witness in violation of section 136.1, subdivision (b)(1).

DISPOSTION

The judgment is affirmed.

BENKE, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.

21

Filed 8/8/18

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>PEDRO RODRIGUEZ,<br><br>      Defendant and Appellant. | D071405<br><br><br><br> (Super. Ct. No. SCN333477)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT:

The opinion in this case filed July 19, 2018, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing

on page 1 of said opinion be deleted and the opinion herein be published in the Official

Reports.

McCONNELL, P. J.

Copies to:  All parties